**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| THOMAS WALCZYK,ELIZABETH WALCZYK, MAXIMINA WALCZYK, individually and as P.P.A for MICHELLE WALCZYK, a minor child. | : : : : | CIVIL ACTION NO. 3:02CV1537 (RNC) |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN,WILLIAM TYLER, ANGELA DESCHENES AND, SHAWN BROWN | : : : | |
| | : | FEBRUARY 2, 2004 |
| Defendants | | |

**PLAINTIFF S MOTION FOR SUMMARY JUDGMENT**

_____Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiffs respectfully move for summary judgment on each count of their complaint because there are no genuine issues of material fact to contradict the fact that the defendants falsely arrested the plaintiff based on a warrant wholly lacking in probable cause and obtained through the reckless omission of material information and the reckless inclusion of irrelevant and uncorroborated information presented as fact. Further, there is no genuine issue of material fact regarding the illegal search of the plaintiffs homes and the unlawful seizure of the plaintiffs property in reliance on a search warrant wholly lacking in probable cause and illegally overbroad. Moreover, there is no genuine issue of material fact regarding the excessive bail.

In support of this motion, the plaintiff s submit under separate cover and incorporates herein their Local Rule 54(a)1 statement of undisputed facts, their Local Rule 54(a)2 statement and a memorandum of law. The plaintiff also submits the following documents in support of his instant motion:

Exhibit A.    Thomas Walczyk Deposition dated July 30, 2003

Exhibit B.    David C. Hebert Report dated August 30, 1999

Exhibit C.    David C. Hebert Trial Testimony dated March 23, 2001

Exhibit D.    Excerpts from William Tyler Deposition dated September 16, 2003

Exhibit E.    William Tyler s Supplemental Report dated September 7, 1999

Exhibit F.    Affidavit and Application for Search Warrant dated 9/4/99

Exhibit G.    Return for and Inventory Seized on Search and Seizure Warrant dated September 7, 1999

Exhibit H.    Uniform Arrest Report from 9/7/99

Exhibit I.    Information Docketing Sheet

Exhibit J.    Excerpts from Elizabeth Walczyk Deposition dated July 31, 2003

Exhibit K.    Excerpts from James Rio Deposition dated September 13, 2003

Exhibit L .    Excerpts from Angela Deschenes Deposition dated September 16, 2003

Exhibit M.    Excerpts from Shawn Brown Deposition dated September 16, 2003

Exhibit N.    Excerpts from James Jepsen Deposition dated September 13, 2003

Exhibit O.    Excerpts from Brian Royce Deposition dated September 19, 2003

Exhibit P.    Excerpts from Jeffrey Garewski Deposition dated September 19, 2003

Exhibit Q.    Excerpts from Maximina Walczyk Deposition dated August 1, 2003

Exhibit R.    Excerpts from Michelle Walczyk Deposition dated August 1, 2003

Exhibit S.    Arrest Warrant Application dated September 4, 1999

Exhibit T.    Brian Killiany Statement dated September 13, 1999

WHEREFORE, the plaintiff respectfully moves that this Motion be granted and that judgment be entered in his favor.

THE PLAINTIFFS,


By: _____
    Jon L. Schoenhorn ct00119
    Their Attorney
    Jon L. Schoenhorn & Associates
    97 Oak Street, Hartford, CT 06106
    Tel (860) 278-3500

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed first class, postage prepaid, to the following counsel of record on the date of this pleading:

Thomas R. Gerarde, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
Tel. (860) 249-1361


_____
Jon L. Schoenhorn

# UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

THOMAS WALCZYK, ELIZABETH           :     CIVIL ACTION NO. 3:02CV1537 (RNC)
WALCZYK, MAXIMINA WALCZYK,          :
individually and as P.P.A for MICHELLE   :
WALCZYK, a minor child.             :

      Plaintiffs                    :
                               :
v.                                  :
                               :
JAMES RIO, BRIAN KILLIANY, JAMES    :
JEPSEN, WILLIAM TYLER, ANGELA       :
DESCHENES AND, SHAWN BROWN          :
                               :     FEBRUARY 2, 2004
      Defendants

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS  MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, the plaintiffs, by and through their

undersigned counsel, submit this memorandum of law  in support of their motion for summary

judgment.  Because the defendants cannot raise a genuine issue of material fact on any of the

plaintiffs  claims, judgment should be granted to the plaintiffs on all counts of their complaint

against each and every defendant.

## SUMMARY OF FACTS

In August 1999, Plaintiff Thomas Walczyk, lived with his wife, Plaintiff Maximina Walczyk,

and their four children ages 17, 14, 11 and Plaintiff Michelle Walczyk, 8, in a single-family home

located at 28 Tunxis Street, Farmington, which is surrounded by woods and a river bank.  (Exhibit

A, pp. 5-7; ).  His parents, Lucian and Plaintiff Elizabeth Walczyk, lived almost directly across the

street at 27 Tunxis Street.  ((Exhibit A, pp. 17-18).   Although, like most adults, Plaintiff Thomas

Walczyk had once lived with his parents at 27 Tunxis Street, he had not resided at that address since at least 1992 (Exhibit A, pp. 6; Exhibit J, p. 72).

For several years prior to August 1999, Thomas Walczyk and his parents had been involved in a protracted legal dispute with the Barberino Realty and Development Corporation (hereinafter Barberino) over land adjacent to the Walczyks property. The core of this dispute revolved around the elder Walczyks claims of adverse possession and the exercise of ownership and/or farming rights derived therefrom. (Exhibit A, pp. 7-16). Lucian and Elizabeth Walczyk had previously entered into a stipulated agreement with Barberino which gave them certain rights to the land. (Exhibit A, pp. 48-50; Exhibit J, pp. 25-26) Thomas Walczyk s separate claim, however, was adjudicated adversely to him, and, therefore, his only continued interest in the disputed land was derivative of that of his parents. (Exhibit A, pp. 7-16). Farmington Police officials were aware of this land dispute because Thomas had contacted them in the past concerning damage by Barberino work crews. (Exhibit A, pp. 40-41).

On August 30, 1999, Thomas Walczyk was walking on his own property when he noticed that a locked gate with a no trespassing sign had been knocked down and a logging skidder was parked on the property. (Exhibit A, pp. 61-62). Thomas Walczyk returned to his house and asked his adult daughter to videotape the damage in order to document it. (Exhibit A, pp. 73-74). He also called the Farmington Police to report the incident. (Exhibit A, pp. 61-62). About ten minutes later, Officer David Hebert of the Farmington Police Department arrived at Thomas Walczyk s house, followed shortly thereafter by a police supervisor. (Exhibit A, pp. 73, 76).

Upon observing the damage and listening to Thomas Walczyk s complaint, Hebert asked Walczyk if he could produce title to the land in question. Walczyk was unable to do so for the reasons previously stated. Hebert essentially demurred, noting that he could not do anything if the

-2-

property ownership was in dispute. (Exhibit B). At some point during this conversation, while attempting to impress upon Officer Hebert the importance of enforcing the law, Hebert reported that Walczyk remarked that trespass laws were enacted to avoid bloodshed and the police were not taking the action needed to avoid a bloodbath. (Exhibit B; Amended Complaint ¶13, and Answer).[1] While this comment annoyed Hebert, he never feared for his safety, and took no enforcement action, because he did not believe that Walczyk, who neither mentioned a weapon nor carried one, committed any crime. (Exhibit C, pp. 29, 46, 48).[2] Hebert warned the plaintiff not to interfere with construction on the disputed property or he could face arrest. (Exhibit C, pp. 50-51). During the approximately thirty minutes Hebert met with Walczyk, Walczyk did not display, indicate, or mention a firearm or other weapon of any sort. (Exhibit C, pp. 39-40, 43, 52). This was the sum total of the so-called incident, and Walczyk and Hebert parted company. Hebert filed an incident report, but took no law enforcement action against Thomas Walczyk. (Exhibit B, Exhibit C, pp. 29, 46,48 ).

Despite Officer Hebert s conclusion that no crime had been committed, on September 4, 1999, Defendants Tyler, Rio and Deschenes reviewed Hebert s report and, after consulting among themselves, decided to procure an arrest warrant for Thomas Walczyk for the crime of threatening, Connecticut General Statutes § 53a-62. (Exhibit D, pp. 32-35; Exhibit K, pp. 11-12; Exhibit L, pp.

---

[1]    Thomas Walczyk denied that he made the remark as reported. He testified that he explained to the officer that trespass laws were enacted to avoid property disputes and that here s a law that s meant to avoid bloodshed. If you don t enforce this law and a bloodbath ensues, are you going to be responsible? (Exhibit A, pp. 76-77). See also Exhibit E. However, in this memorandum, the plaintiffs rely on the evidence in the light most favorable to defendants version.

[2]    Hebert testified that he did not believe Walczyk was threatening him when he made his off-color comment about avoiding a bloodbath, but was referring, instead, to the Barberino Realty Corporation. (Exhibit C, pp. 46, 48, 49, 55).

10-11, 25-28; Exhibit S).  Without ever speaking to Officer Hebert, Defendant Tyler decided a crime

had occurred, prepared applications for these two warrants, and then signed the arrest warrant

affidavit himself.  (Exhibit S; Exhibit D, pp. 29-30).  Tyler then cut and pasted the information in the

arrest warrant application into the search warrant application and gave the already-prepared

application for a search warrant to Defendants Shawn Brown and Angela Deschenes, who signed the

search warrant affidavit under oath.  (Exhibit D, pp. 62-64; Exhibit F)  Both Brown and  Deschenes

had no involvement in the preparation of either warrant application and merely signed off based on

the representations and/or orders of Tyler and Rio.  (Exhibit L, pp. 30-32; Exhibit M, pp. 14-17).

Neither Deschenes nor Brown independently investigated or verified any of the information in the

search warrant to verify its accuracy, or to determine the outcome of any of the uncharged

misconduct alleged in the warrant applications.  (Exhibit L, pp. 30-31; Exhibit M, pp. 19-20).

Thereafter, Defendants Brown and Deschenes went to the home of a Connecticut Superior Court

judge in West Hartford to obtain judicial authorization for these warrants.  (Exhibit L, pp. 57-58).

According to Defendant Deschenes, she and Brown were interrupting a wake for the judge s

recently deceased mother when they arrived to present the judge with the warrant affidavits.   The

judge signed both warrants.  (Exhibit L, pp. 57-58).

On September 4, 1999, an arrest warrant for the arrest of Thomas Walczyk on the charge of

threatening in violation of Conn. Gen. Stat. §53a-62, was issued by the Superior Court judge, based

upon the previously referenced affidavits. (Exhibit S).  On that same date, a single search warrant

seeking all  firearms  was also issued; not only for Thomas Walczyk s residence, but also for the

residence of Lucian and Elizabeth Walczyk s residence, as well.  Both warrants were executed on

September 7, 1999.  (Exhibit S; Exhibit F; Exhibit N, 20-23; Exhibit K, p. 37; Exhibit Q, p. 14).

Acting first under the arrest warrant, the police lured Thomas Walczyk to the Farmington Police

station by telephoning him and falsely inviting him to come to the station to discuss the property dispute. (Exhibit A, pp. 78-81; Exhibit E; Exhibit N, pp. 17, 18, 20-22) This invitation was admittedly a ruse as the police had no intention of discussing the property dispute with Thomas Walczyk, and wanted only to keep him away from his home during the search of his home and that of his parents. (Exhibit E; Exhibit N, pp. 17-18, 20-21). Once Walczyk arrived, Sergeant Tyler of the Farmington Police placed him under arrest and removed him to the cellblock, where he was held on a high bond. (Exhibit A, pp. 84-91; Exhibit N, p. 22; Exhibit D, pp. 86-88, Exhibit H). The Farmington Police also called upon the West Hartford Police  SWAT  team to assist in the execution of the searches. The West Hartford officers were informed that the SWAT team was needed because of a potentially volatile situation. Exhibit O, pp. 12-14, 16, 18-19; Exhibit P, pp. 8-9.

At the same time, Plaintiff Thomas Walczyk was being arrested, several officers from both the Farmington and West Hartford Police departments executed a single search warrant at both 27 and 28 Tunxis Street, which authorized a search for  firearms. (Exhibit N, p. 24). Plaintiffs Maximina and Michelle Walczyk were present at their home, 28 Tunxis Street, when the police arrived to execute the search warrant. (Exhibit Q, pp. 20-23; Exhibit R pp. 7-12). At the time, Michelle Walczyk, age 8, was home from school, suffering from a stomach virus, and was running a fever. (Exhibit Q, pp. 23-24; Exhibit R pp. 7-12). Upon arrival at 28 Tunxis Street, the police entered the house, over objection, because of the sick child. (Exhibit Q, pp. 22-24). Despite pouring rain at the time, the police ordered Maximina to take Michelle out of the home, refusing, however, to allow her to go to her grandparents  home across the street. (Exhibit Q, pp. 29; Exhibit R pp. 12, 13).

At Thomas Walczyk s home, the police seized handguns and rifles, some rare collector s

items, that were all lawfully registered.  (Exhibit G); Exhibit A, pp. 32-33, 141-42).  In addition to firearms, the police seized approximately 2,600 rounds of ammunition, as well as canteens, ammunition belts and other items,  none of which were listed in the warrant.  (Exhibit G; Exhibit A, pp. 32-33, 141-42).

At the same time, other officers entered Elizabeth and Lucien Walczyk s home, 27 Tunxis Street, and searched it for firearms, despite the protestations of both Elizabeth and Lucian that none of the guns at 27 Tunxis Street belonged to Thomas Walczyk.  (Exhibit J, pp. 29-30, 34-35).  Through the course of that search, the police seized six handguns, nine rifles, three shotguns and one gun case, all of which belonged to Lucian Walczyk, Thomas Walczyk s late father.[3]  During the searches at both homes, members of the police departments were videotaping the interior and the exterior of both homes.  (Exhibit J, pp. 64-65).

After the search, and as a direct result of the items found during said search, Thomas Walczyk was charged with the additional crimes of disorderly conduct, reckless endangerment in the second degree and risk of injury to a minor, and six infraction counts of improper storage of a firearm.  (Exhibit I).  At trial he was acquitted of the felony charges, but appealed his misdemeanor and infraction charges.  He was ultimately exonerated in the appeal on all charges.  *See State v. Walczyk*, 76 Conn. App. 169 (2003).

## ARGUMENT

## I.     STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if  the pleadings, depositions, answers to interrogatories and admissions on file, together

---

[3]     Lucian Walczyk died in 2002.  According to his widow, he asked her on his death bed whether his prized gun collection had been returned.  (Exhibit J, pp. 74-75).  The collection passed to Elizabeth upon Lucian s death.

with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.   When deciding a motion for summary judgment,

the court  must resolve all ambiguities and draw all inferences in favor of the nonmoving party.

*Millgard Corp. v. White Oak Corp.,* 224 F. Supp. 2d 425, 428, (D. Conn. 2002), *citing Aldrich v.*

*Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).

     The moving party bears the initial burden of demonstrating that no factual issue exists and

that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

In ruling on a motion for summary judgment,

> [t]he inquiry performed is the threshold inquiry of determining whether there is a
> need for a trial - whether, in other words, there are any factual issues that properly
> can be resolved only by a finder of fact because they may reasonably be resolved in
> favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

     The movant must demonstrate the absence of a genuine issue of material fact.  If the movant

carries this burden, the burden then shifts to the non-moving party to produce concrete evidence

sufficient to establish a genuine unresolved issue of material fact.  *See Celotex Corp. v. Catrett*, 477

U.S. at 322-24.  The court then must view the facts in the light most favorable to the non-movant

and give that party the benefit of all reasonable inferences from the evidence that can be drawn in

that party's favor.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).  The court

neither weighs evidence nor resolves material factual issues but only determines whether, after

adequate discovery, any such issues remain unresolved because a reasonable factfinder could decide

for either party.  *See Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 249; *Gibson v. Am. Broad.*

*Corp.*, 892 F.2d 1128, 1132 (2d Cir. 1989).  However, neither conclusory statements, conjecture, nor

speculation suffice to defeat summary judgment. *See Kulak v. City of New York*, 88 F.3d 63, 71 (2d

Cir.1996).

II.    **THOMAS WALCZYK IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HIS CLAIMS OF ILLEGAL SEARCH AND SEIZURE, UNLAWFUL ARREST, AND EXCESSIVE BAIL**

A.    **Both the Search and the Arrest Warrants Failed to Establish Probable Cause to Search or to Arrest**

The fourth amendment to the United States Constitution guarantees, *inter alia*, that  no warrants shall issue, but upon probable cause,  that must particularly describe  the place to be searched, and the persons or things to be seized.   The Connecticut Supreme Court has interpreted Article 1, § 7 of the Connecticut constitution as providing greater protection than the fourth amendment.  See, *State v. Geisler,* 222 Conn. 672, 684 (1992).

Probable cause encompasses  such facts as would reasonably persuade an impartial and reasonable mind *not merely to suspect or conjecture, but to believe* that criminal activity has occurred.   *State v. Barton,* 219 Conn. 529, 547, 594 A.2d 917 (1991) (emphasis supplied); *See also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).   Probable cause means more than mere suspicion;  *Beck v. Ohio*, 379 U.S. 89, 91 (1964); and  common rumor or report, suspicion, or even strong reason to suspect, are not sufficient to constitute probable cause. . ..   *State v. Shifflett*, 199 Conn. 718, 748, 508 A.2d 748 (1986) (internal quotation marks omitted).  *See also Henry v. United States*, 361 U.S. 98, 101 (1959).

> In determining the existence of probable cause to search, the issuing judge must make a practical, nontechnical decision whether, given all the circumstances set forth in the warrant affidavit, including the  veracity  and the  basis of knowledge  of persons supplying hearsay information, there is a fair probability that contraband or evidence *of a crime* will be found in a particular place.

*State v. Martinez*, 51 Conn. App. 59, 66, 719 A.2d 1213 (1998) (emphasis supplied); *Illinois v. Gates*, 462 U.S. 213 (1983).

Although the plaintiffs assert elsewhere in this memorandum, that the affiants recklessly

-8-

disregarded the truth in a number of ways in the preparation and submission of the arrest and search warrants, see *infra,* nevertheless, the Supreme Court has made clear that police are not entitled to rely on the fact that a magistrate signed the warrants, as proof that applying for the warrants was per se reasonable. To the contrary, the proper inquiry is whether a reasonably well-trained officer in [the defendants ] position would have known that [the] affidavit failed to establish probable cause and that he should not have applied for the warrant. *Malley v. Briggs*, 475 U.S. 335, 345 (1986). The Court s analysis was based upon the objective reasonableness standard of *United States v. Leon*, 468 U.S. 897 (1984), which confined the good-faith reasonableness to whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate s authorization. *Id*. at 922.

The reason for this judicial scrutiny of warrants was explained as follows:

> It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

*Malley v. Briggs*, 475 U.S. at 345-46. *See also, Greenstreet v. County of San Bernardino*, 41 F.3d 1306 (1994). This maxim is particularly true here, where one of the defendants admitted that they were intruding on the wake of the judge s mother.

**(1.)    The Warrant Affidavits Fail to Establish that any Crime was Committed.**

Probable cause to arrest means more than mere suspicion. There must be facts and circumstances within the officer s knowledge, and of which has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. *Beck v. Ohio, supra; Brinegar v. United States*, 338 U.S. 160, 175-76 (1949). While there is a fine line between suspicion and probable cause, that line necessarily must be drawn by an act of judgment

-9-

formed in the light of the particular situation and with account taken of all the circumstances. *Id.* at 176.

Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized *are connected with criminal activity* or will assist in a particular apprehension or conviction,... *and* (2) there is probable cause to believe that the items named will be found in the place to be searched. *State v. Smith,* 257 Conn. 216, 223, 777 A.2d 182 (2001) (emphasis supplied). In other words, there must be a nexus between some criminal activity and the items sought to be seized. *Warden v. Hayden*, 387 U.S. 294, 307 (1967). The nexus between the items sought and the place to be searched may be inferred from the type of crime, the nature of the evidence, the extent of the opportunity for concealment and normal inferences as to where a criminal would likely hide the item.... *State v. Martinez, supra*, 51 Conn. App. at 68.

In this case, such a nexus simply did not exist, because the information contained in the search warrant affidavit established neither that criminal activity existed nor that firearms named in the warrant were connected to any criminal activity. The criminal activity alleged in the warrant was threatening, a misdemeanor; the items sought to be seized were firearms. Only the second paragraph in the warrant affidavit purports to deal with the plaintiff s alleged  threat  - namely that the plaintiff commented to Officer Hebert in connection with the Farmington Police refusal to take action against trespassers, that  trespass laws were enacted to avoid bloodshed and that the police were not taking the action needed to avoid a  bloodbath . At most, that statement accused Farmington Police of failing to execute their duty in a proper manner in light of the purpose of the law. However, no reasonable interpretation of that statement can constitute  a  threat  against anybody.

The Connecticut Appellate Court has interpreted the act of threatening as something that

-10-

imparts the expectation of bodily harm, thereby inducing fear and apprehension in the person

threatened.   *State v. Snead*, 41 Conn. App. 584, 593, 677 A.2d 446 (1996)[4].   A person can violate

Conn. Gen. Stat. § 53a-62 in one of three ways.   First, a person is guilty of threatening if  [b]y

physical threat  that person  intentionally places or attempts to place another person in fear of

imminent serious physical injury.   Alternatively, a person can be guilty of threatening when  he

threatens to commit any crime of violence with the intent to terrorize another, to cause evacuation of

a building, place of assembly, or facility of public transportation, or otherwise cause serious public

---

[4]     Although decided after Thomas Walczyk s appeal, the state Supreme Court in
*State v. Deloreto*, 265 Conn. 145 (2003), clarified Conn. Gen. Stat. § 53a-62 even
further when applied, as here, to verbal statements.  Adopting language from
*Virginia v. Black*, 538 U.S. ___, 123 S.Ct. 1536 (2003), the *Deloreto* court stated
that  [t]rue threats encompass those statements where the speaker means to
communicate a serious expression of an intent to commit an act of unlawful
violence to a particular individual or group of individuals. . .  which, therefore,
fall outside first amendment protection. *Id.* at 154.  According to both the *Black*
and *Deloreto* decisions, the underlying rationale for allowing the prohibition of
 true threats  starts with the already familiar proposition that expression has
special value only in the context of dialogue: communication in which the
participants seek to persuade, or are persuaded; communication which is about
changing or maintaining beliefs, or taking or refusing to take action on the basis
of one s beliefs. . . .  *Id.* at 155.   [A]s speech strays further from the values of
persuasion, dialogue and free exchange of ideas the first amendment was
designed to protect and moves towards threats made with specific intent to
perform illegal acts, the state has greater latitude to enact statutes that effectively
neutralize verbal expression. . . .  Thus, we must distinguish between true threats,
which because of their lack of communicative value, are not protected by the first
amendment, and those statements that seek to communicate a belief or idea, such
as political hyperbole or a mere joke, which are protected.  See *Watts v. United
States*, 394 U.S. 705, 708, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)(statement that
speaker would shoot president of United States made at political rally constituted
protected political hyperbole).   *Id.*  Thomas Walczyk s statement was made to
prompt the police to recognize and protect his interest in property.  Thus, the
statement falls within the purview of protected speech as it sought to persuade the
police to fulfill their duties and enforce the trespassing law under either Hebert s
version of Thomas Walczyk s remarks or Walczyk s own version.

-11-

inconvenience . The third manner in which a person can violate the statute is to commit a crime of violence as above, substituting reckless disregard of the risk as the *mens rea.*

The search warrant affidavit (Exhibit F ) contains no information to suggest that the plaintiff threatened anyone, and could not, therefore, provide probable cause sufficient to justify a search. Likewise the arrest warrant affidavit (Exhibit S), containing the same information, was equally deficient. The plaintiff merely made a general statement about the potential consequences of the refusal of police to intervene in property disputes. Moreover, neither warrant affidavit contained any information that could support even an inference that the plaintiff s conduct was an expression of his intention to commit a crime of violence. Nothing in the affidavits supported the proposition that the plaintiff s comment suggested his intention to do anything *at all* let alone the more specific requirement of an intent to commit a crime of violence.

In each of the affidavits, only one paragraph offers any information about the plaintiff s August 30, 1999 activities. The remaining paragraphs were nothing but rumors of past instances of lawful activity or potentially criminal behavior instances that the defendants all concede they never bothered to examine to determine if there was ever a basis for the accusations. The affidavit is silent as to whether any alleged prior arrests led to a conviction or were even substantiated as criminal material facts that surely would have been noted in the warrant if they existed. Notably, the Connecticut Appellate Court in *State v. Delgado*, 13 Conn. App. 139, 150, 535 A.2d 377 (1987) has stated that a mere arrest is indicative of nothing. The fact of an arrest is as consistent with innocence as it is with guilt. Moreover, the plaintiff s uncontested testimony makes clear that none of the prior incidents resulted in any findings of threats of violence or improper use of a firearm.

Indeed the affidavit paragraph concedes that the plaintiff s activities on a particular occasion were completely legal. The two warrant affidavits are thus devoid of any *facts* which would tend to

-12-

support the conclusion that the plaintiff s use of the word  bloodbath  constituted a threat within the meaning of Conn. Gen. Stat. § 53a-62.  In short, under any plausible reading, the affidavit presents no reasonable basis for any defendant to believe that  a crime had occurred.  Thus, neither the search, nor the arrest, could be justified, and the defendants are liable for violation of the plaintiffs fourth amendment rights.

**(2.)    The Search Warrant Contained No Facts to Justify a Search for Firearms**.

Even assuming *arguendo* that the plaintiff s comments could be construed as a verbal  threat  in some abstract form, there is nothing whatsoever in the search warrant to justify the proposition that Thomas Walczyk s firearms - - or those of his parents - - had any connection to that crime.  *See Warden v. Hayden, supra*, 387 U.S. at 307.  Nothing in the affidavit indicated that the plaintiff either possessed, referenced or displayed a firearm at the time of his conversation with Officer Hebert.  There was no nexus whatsoever with any firearms in the plaintiff s home, any more than if the police chose to seize kitchen knives, pitchforks, or power tools.  The plaintiff s possession of lawfully registered and licensed firearms did not lead to the conclusion that it was more likely than not that the plaintiff voiced a threat.  The weapons were, therefore, irrelevant.  Firearms had *no* connection whatsoever with the crime alleged in the search warrant affidavit.

The only possible theory upon which the defendants may seek to connect the plaintiff s statement to the plaintiff s firearms, is through the pure unsubstantiated hearsay information contained in paragraphs 6 through 10 of the affidavit.  As noted above, these paragraphs contained allegations of past incidents   some a decade old   in which it was reported that the plaintiff engaged in some activity with a firearm.  As further noted above, none of these paragraphs added anything to the analysis of probable cause presented to the magistrate.  Paragraph 8 was obviously irrelevant.  It offered unsubstantiated hearsay evidence from  neighbors  that the plaintiff in 1990  was shooting

-13-

guns on property at the end of Tunxis Street. *He was shooting but was not in violation* of any law. (emphasis supplied.) None of this stale information even belonged in the probable cause equation.

Paragraph 6 detailed an incident allegedly investigated in 1996 in which the plaintiff's brother reported that the plaintiff threatened to shoot him. This paragraph makes it perfectly clear, however, that the brother felt no imminent threat...*and no arrest was made*. (emphasis added). The plaintiff denied making such a threat. Even if a reasonable officer could credit the veracity of this information, it does not make it more probable that firearms sought in the warrant were evidence of an alleged threat on August 30, 1999.

Paragraphs 7, 9 and 10 purport to document hearsay incidents from years before that resulted in arrests, without any reference to convictions. Each of the defendants involved in the preparation of these warrant affidavits admits that they made no effort whatsoever to determine the outcome of these arrests. (Exhibit L, pp. 30-32; Exhibit M, pp. 19-20). Plaintiff Thomas Walczyk testified that all of these charges were either dropped or reduced to minor offenses. (Exhibit A, pp. 50-52, 54-56; 57-60). Seven years earlier neighbors reported seeing the plaintiff shoot a cat on his property (¶ 7); nine years earlier a motorist who followed the plaintiff home after a dispute claimed he was threatened with an assault rifle (¶ 9); and over eleven years prior to August 20, 1999, an unidentified employee of Barberino Realty alleged the plaintiff threatened him with an assault rifle (¶ 10). ) The affidavit is silent as to the outcome of these charges leaving their ultimate disposition to the speculation of the magistrate. It is reasonable to infer, however, that had the plaintiff been convicted of anything, such information would appear in the warrant affidavit. These paragraphs were also silent as to how and why this unsubstantiated hearsay information was relevant at all to the issuing judge's determination that probable cause existed to search the plaintiff's home on September 4, 1999 and his parents' home for firearms. Since the mere fact of an arrest is as

-14-

consistent with innocence as it is with guilt, this information contributed nothing, and did not make it more likely that Mr. Walczyk committed a crime on August 30, 1999, or that his (or his parents ) firearms were fruits or instrumentalities of that crime.

The totality of the circumstances presented in these paragraphs, suggests unsubstantiated instances when the plaintiff was allegedly arrested and two instances when false complaints were lodged against the plaintiff but no illegal acts occurred. At most, the cumulative impact of this information raises questions about the plaintiff s prior relationship with the Farmington Police Department, but does not increase the probability that he committed a crime on August 30, 1999 or possessed the fruits thereof.

Only two relevant  facts  were left in the search warrant affidavit for consideration. First, on August 30, 1999, the plaintiff supposedly said  the Farmington Police were not taking the action needed to avoid a  bloodbath . This was, of course, only a part of what Officer Hebert claimed the defendant said. Second, the plaintiff lawfully possessed registered firearms. Because it was based on  mere arrests  and irrelevant lawful activity, the remainder of the warrant affidavit was merely a smokescreen designed to distract the issuing magistrate from noting the obvious absence of a factual predicate for probable cause. The affidavit contained no information connecting firearms with any alleged criminal activity and could not, therefore, support the magistrate s determination of probable cause to search. No reasonable police officer could have believed that the information contained in the warrant affidavit was sufficient to bring to a judge. Therefore, the plaintiffs are entitled to summary judgment on their fourth amendment search and seizure claims.

**B.     The Search Warrant Failed to State with Particularity the Place to Be Searched and the Officers Exceeded the Scope of the Warrant by Seizing Items Not Named Therein**.

The fourth amendment to the federal constitution requires that search warrants describe with

particularity the place to be searched and the persons or things to be seized.  The
[particularity clause] was a direct response to the evil of the general warrant, one of the
abuses by the Crown that led to the American Revolution: [T]he problem [posed by the
general warrant] is not that of intrusion *per se*, but of a general exploratory rummaging in a
person s belongings.... [The fourth amendment addressed the problem] by requiring a
particular description of the things to be seized....  This requirement makes general
searches...impossible and prevents the seizure of one thing under a warrant describing
another.

*Andresen v. Maryland*, 427 U.S. 463, 480 (1976).

By limiting the authorization to search to the specific areas and things for which there
is probable cause to search, the requirement ensures that the search will be carefully
tailored to its justifications, and will not take on the character of the wide-ranging
exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison,* 480 U.S. 79, 84 (1987).  The particularity requirement, thus, deters  general,

exploratory rummaging in a person s belongings  and assures that  the scope of a lawful search will

be limited to the places in which there is probable cause to believe that [the items sought] may be

found.  *Id.*  The particularity requirement is met with respect to a place  if the description is such

that the officer with a search warrant can with reasonable effort ascertain and identify the place

intended.   *Steele v. United States No. 1,* 267 U.S. 498, 503 (1925).  With respect to things, the

standard is met if  the officer. . . can identify the property sought with reasonable certainty.

LaFave & Israel, Criminal Procedure §3-4(f).

In addition, Article I, §7 of the Connecticut Constitution requires even more specificity than

the fourth amendment, by its express term that warrants describe a place or thing  as nearly as may

be.   Prior to the incorporation of the fourth amendment as  implicit in the concept of ordered

liberty,  *Mapp v. Ohio*, 367 U.S.643 (1961)   indeed, prior to the drafting of the fourteenth

amendment   the "as nearly as may be" language in the Connecticut Constitution was interpreted to

mean that both the place to be searched and the items to be seized must be described "as nearly as

the circumstances will admit." *Gray v. Davis*, 27 Conn. 447, 457 (1858). If the thing to be seized or place to be searched *may* be described with such reasonable particularity as to make it distinguishable from all other things, then it *must* be described that way. *Id.*

The search warrant in the instant case failed to satisfy either the federal or more exacting state particularity requirement. First, the affidavit failed to establish that Thomas Walczyk kept firearms at either 27 or 28 Tunxis Street in Farmington. It merely gave his address as 27 Tunxis Street (¶ 2) and noted that he has maintained residences at both 27 and 28 Tunxis St. (¶ 12). Nothing in the warrant affidavit indicated what firearms were to be seized from which residence, and the defendants all admit that guns from both dwellings were indiscriminately seized, including all of those belonging solely to Lucian Walczyk. The defendants had a duty, at a minimum, to determine whether, in fact, the plaintiff stored guns at his own home or at his parents home, and to identify which was which in the search warrant.

Another purpose of the particularity requirement is to prevent the seizure of objects in the mistaken belief that they are within the scope of the issuing magistrate s authority. *1 LaFave & Israel, supra.* "The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). In *State v. Eady*, 249 Conn. 431, 437 (1999), the Connecticut Supreme Court set forth two requirements to justify a warrantless seizure of items in plain view. First, the initial intrusion that enabled the police to view the items must have been lawful, and second, the police must have had probable cause to believe the items were contraband or stolen goods. *Id.* A footnote adds that plain view extends to objects dangerous in themselves. *Id.*

In the instant case, the police seized nearly 2,600 rounds of ammunition, gun clips,

ammunition belts, canteens and other items from the plaintiff s residence that were not named in the warrant.  They were not contraband or stolen, and it is ludicrous to argue that they were  dangerous in themselves.   This seizure was wholly outside the scope of the warrant and, therefore, an unconstitutional seizure.  Thus, the plaintiffs have established an additional basis for a violation of the fourth amendment.

    **C.**    **The Search and Arrest Warrants were Obtained by the Inclusion of Half-Truths and by Deliberately Omitting Information and in Reckless Disregard of the Truth**

The Fourth Amendment of the United States Constitution states in relevant part that no  Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . .     Probable cause to arrest exists under federal law when the authorities have knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.   *Smith v. Edwards*, 175 F.3d 99, 106 (D. Conn. 1999), *quoting Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991), *cert. denied*, 112 S. Ct. 3032 (1992) (*citing Dunaway v. New York*, 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 99 S.Ct. 2248 (1979)).   Similarly, under Connecticut state law, probable cause comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred.   *Smith v. Edwards*, 175 F.3d 99, 106 (D. Conn. 1999), *quoting State v. Barton*, 219 Conn. 527, 594 A.2d 917, 928 (Conn. 1991) and *Stone v. Stevens*, 12 Conn. 219, 230 (1837).  Probable cause means more than mere suspicion, *Alabama v. White*, 496, U.S. 325, 330 (1990) ; and  common rumor or report, suspicion, or even strong reason to suspect, are not sufficient to constitute probable cause. . ..  *Henry v. United States,* 361 U.S. 98, 101 (1959).

In determining the existence of probable cause to search, the issuing judge must make a practical, nontechnical decision whether, given all the circumstances set forth in the

warrant affidavit, including the  veracity  and the  basis of knowledge  of persons
supplying hearsay information, there is a fair probability that contraband or evidence
*of a crime* will be found in a particular place.

*State v. Martinez*, 51 Conn. App. 59, 66, 719 A.2d 1213 (1998) (emphasis supplied).

When  the Fourth Amendment demands a factual showing sufficient to comprise  probable
cause,  the obvious assumption is that there will be a *truthful* showing.   *Franks v. Delaware*, 438
U.S. 154, 164-65, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) (emphasis in original). Thus, an  officer
can  have no reasonable grounds for believing that [a] warrant was properly issued   if the
magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant
knew was false or would have known was false except for his reckless disregard of the truth.
*Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991), *quoting United States v. Leon*, 468 U.S.
897, 923, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984).

A section 1983 plaintiff challenging a warrant on this basis must make the same showing
that is required at a suppression hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56, 57 L. Ed.
2d 667, 98 S. Ct. 2674 (1978): the plaintiff must show that the affiant knowingly and deliberately, or
with a reckless disregard of the truth, made false statements or material omissions in his application
for a warrant, and that such statements or omissions were necessary to the finding of probable
cause.  *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)*, citing Golino*, 950 F.2d at 870-71;
*Franks*, 438 U.S. at 171-72.   *See also Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991);
*Magnotti v. Kuntz*, 918 F.2d 364, 367-68 (2d Cir. 1990); *United States v. Orozco-Prada*, 732 F.2d
1076, 1089 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S. Ct. 154, 83 L. Ed. 2d 92 (1984); *United
States v. Barnes*, 604 F.2d 121, 151-53 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S. Ct. 1833,
64 L. Ed. 2d 260 (1980); *United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989), *cert. denied*,
494 U.S. 1068, 108 L. Ed. 2d 788, 110 S. Ct. 1787 (1990).  The plaintiff must also demonstrate that

-19-

the judge would not have issued the warrant on the basis of corrected affidavits.     *Velardi v.*

*Walsh*, 40 F.3d 569, 574 (2d Cir. 1994).  Finally, a plaintiff may prevail in this type of action if   a

reasonably well-trained officer in [the defendants ] position would have known that his affidavit

failed to establish probable cause and that he should not have applied for the warrant.     *Malley v.*

*Briggs*, 475 U.S. 335, 344 (1986).  This is to avoid   the unnecessary danger of an unlawful arrest.

*Id.* at 345.

        In the instant case, the defendants omitted several material facts that would have dramatically

illuminated the obvious lack of probable cause that Thomas Walczyk committed a crime.  First, the

defendants omitted the fact that Thomas Walczyk had not lived at 27 Tunxis Street for at least seven

years prior to the search. Had this fact been disclosed, it would have been obvious that there was

absolutely no reason to search Lucian and Elizabeth Walczyk s home at 27 Tunxis Street,

particularly since, as stated in the previous section, the only fact purporting to link Thomas

Walczyk s firearms to 27 Tunxis Street was the broad fact that he once lived there.   Knowing that

Thomas Walczyk had last resided at 27 Tunxis Street in 1992 makes it unreasonable to infer that he

stored any firearms there in 1999.  Indeed, Defendant Shawn Brown conceded as much when he

admitted that, had he actually investigated and prepared the warrant he signed, he would have

deemed this information material and would have included it. (Exhibit M, pp. 40-41).

        Second, the defendants admit that they failed to investigate or include the dispositions or

outcomes of any of the allegations of prior misconduct contained in the arrest and search warrants.

(Exhibit L, pp. 30-32; Exhibit M, pp. 14-17).  Thus, the fact that none of the incidents resulted in a

conviction or substantiation of the incident, was a reckless omission, particularly since these stale

incidents comprised such a large amount of the warrant affidavit.

        Third, and perhaps most egregious, is the fact that the warrant failed to mention that no one

spoke to the investigating officer, David Hebert, regarding any facts, inferences, context or conclusions based on his first-hand interaction with Thomas Walczyk and what Mr. Walczyk actually said.  Officer Hebert testified that he did not arrest plaintiff Thomas Walczyk at the time of the statement because he felt he had not witnessed a violation of the law.  In other words, Hebert testified that he did not believe that a crime had been committed.  Defendant Brown conceded that he considered this information material and would have included it in the warrant he signed, had he prepared it himself.  (Exhibit M, pp. 35-40, 49).  Without this crucial, material information, the warrants presented a false picture of a loose cannon who reacts to every confrontation by recklessly arming himself and threatening others with firearms.  Adding the omitted information, dismantled this false and misleading picture by illustrating that none of the prior allegations against Thomas Walczyk had been substantiated, and that the officer who spoke to the plaintiff on August 30, 1999, did not believe that he had witnessed or heard of any criminal activity.  Thus, the inclusion of these material omitted facts undermines the basic theory that Thomas Walczyk threatened to commit a crime, or had committed a crime, involving firearms. In other words, the warrant is simply nothing more than evidence of the defendants  irrational and unreasonable overreaction to Thomas Walczyk s constitutional ownership of firearms, and his desire to enlist the police in enforcing trespass laws.

> **D.    Thomas Walczyk s Bail was Excessive and Designed to Keep Him Locked Up During the Search of His Home**

The defendants admitted that they lured Thomas Walczyk to the Farmington Police Department on September 7, 1999 by calling him up and inviting him to police station to discuss the ongoing land dispute with Barberino Realty.  The defendants had already procured the arrest warrant and had no intentions of discussing the land dispute with Thomas Walczyk.  Thereafter, the police set bail of $1,000.00 on the threatening charge and awaited the results of the search.  At some point

while Thomas Walczyk was still detained by the Farmington Police Department, the defendants brought additional charges and increased the bail to $10,000.00.

Plaintiff Thomas Walczyk anticipates that the defendants may claim that they should receive the benefit of absolute *judicial* immunity from any claims resulting from bail that they set, based upon the decision of *Sanchez v. Doyle*, 254 F. Supp. 2d, 266 (D. Conn. 2003). In that case, the district court, relying on federal precedent, held that [s]etting bail is a judicial act and, therefore, granted police officers judicial immunity for suits derived from their bail-setting function.[5] The plaintiffs first submit that *Sanchez* fails to account for the significant distinction between the roles performed by the judiciary and the police in setting bail in Connecticut courts. The police are engaged in the often competitive enterprise in ferreting out crime. *Johnson v. United States*, 333 U.S. 10, 14 (1948). They are, therefore, neither neutral nor detached in approaching their determination of bail. They possess considerable incentive to use bail as an investigative, vindictive and/or interrogation tactic to leverage suspects into complying with their own interests. Therefore, as a matter of policy, they should not be entitled to judicial immunity for their actions.

Police could set a prohibitively high bail amount in order to detain a suspect long enough to search his home without interference, despite the sole constitutional purpose of bail as ensuring an accused s appearance at trial. With the shield of qualified immunity already offering officers substantial protection from the pressures of litigation on their job performance, it is redundant, indeed counterproductive, to allow police to use bail determinations to aid their investigations in violation of the state and federal constitutions with impunity.

---

[5]     While another district judge has recently reached a similar conclusion, *see, Bacchiocchi v. Chapman*, 2004 U.S. Dist. LEXIS 1077 (Jan. 26, 2004), both cases relied on *Tucker v. Outwater*, 118 F.3d 930 (2d Cir. 1997), where a state judge was the defendant. For a holding rejecting this theory when applied to police setting bonds, see *Wagenmann v. Adams*, 829 F.2d 196 (1st Cir. 1987).

By statute, a municipal police chief, or his duly authorized designee, in the first instance must conduct a bail interview with all arrested persons to obtain information relevant to the terms and conditions of his release from custody, and shall seek independent verification of such information where necessary. After such interview or refusal, the police officer shall release the accused after posting of such bond as may be set by the police officer . . .. Conn. Gen. Stat. § 54-63c. Thus, while under the federal judicial system, all persons arrested must be brought immediately before a magistrate or judge, the Connecticut legislature has delegated this authority in the first instance to local police departments.

Consequently, the *Sanchez* court s determination that bail is a judicial act is not supported by Connecticut law, and local police are not entitled to qualified immunity when they use their bail power for an improper purpose. Thomas Walczyk s arrest and bail was orchestrated by the defendants for no purpose other than to remove him from his home and keep him locked up in police custody during the hours-long illegal search of both his home and his parents home. The police lured him to the police station under false pretenses and then kept him there so they could search his home without his presence. Such behavior clearly violated the constitutional purpose for bail and interfered with the presumption of innocence. Such tactics have no place in a society that calls itself free and summary judgment should be granted on Thomas Walczyk s excessive bail claim.

### E.    The Appellate Court s decision in *State v. Thomas Walczyk* Provides Persuasive Authority to Rule in the Plaintiffs Favor on their Fourth Amendment Claims.

While not dispositive of their claims, the plaintiffs submit that this Court need look no further than the decision of the Connecticut Appellate Court in *State v. Walczyk*, 76 Conn. App. 169, 818 A.2d 868 (2003), for persuasive authority in support of the instant motion for summary judgment. In the decision by former Connecticut Supreme Court Chief Justice Peters, the unanimous panel determined that there was no probable cause whatsoever for the issuance of the

-23-

search warrant, holding that the trial court erred by not suppressing all evidence seized pursuant to its execution.

The Appellate Court began its analysis by noting what the affidavit does *not* say. *Walczyk, supra*, 76 Conn. App. at 180 (emphasis in original). It then listed some of the deficiencies: no attempt to reconcile a construction of the bloodbath statement as a threat in the second subparagraph of paragraph 2, with the statement in the first subparagraph indicating what the plaintiff actually said; it failed to state whether any alleged earlier incidents resulted in convictions of any crimes; it failed to distinguish between recent events and stale claims; it failed to suggest that Thomas Walczyk s possession of weapons was unlawful; it failed to describe the firearms that would be found in each home; and failed to suggest that the plaintiffs parents were engaged in any criminal behavior.

The court concluded that the warrant s contents was slim pickings. *Id.* at 181. In particular, in light of the affidavit s assertion that the plaintiff said to a police officer that there would be a bloodbath if the police took no action, this did not suggest probable cause to believe that the plaintiff intended to resolve the property dispute by taking matters into his own hands, nor that he intended to threaten anyone with a firearm. *Id.* Moreover, the court noted that the plaintiff was actually following the advice of defendant Rio, who told him to contact the police to make a complaint, rather than take matters into his own hands.

The Appellate Court held that [a] statement to a police officer that the police needed to act to avoid a bloodbath cannot be the basis of probable cause to believe that the defendant, at that time or in the immediate future, would engage in threatening behavior. *Id.* at 181-82. It then concluded that the warrant failed to establish probable cause that the plaintiff committed the crime of threatening on August 30, 1999; nor did it establish that the firearms to be seized were connected

-24-

to any criminal activity whatsoever. *Id*. at 182.

## III.    ELIZABETH WALCZYK IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON HER CLAIMS

As noted above in Section II, *supra*, the plaintiff submits that there was absolutely no probable cause to search Elizabeth Walczyk s home.  Thus, the search itself violated Elizabeth Walczyk s federal and state constitutional rights to be free from illegal searches and seizures.  Even assuming *arguendo* that there was probable cause to search Thomas Walczyk s home and seize his firearms, (an assertion that the plaintiffs  obviously dispute), there was nothing in the warrant to support the proposition that any of Thomas Walczyk s weapons were located at Elizabeth Walczyk s residence.  The only reference to 27 Tunxis Street in the warrant was that Thomas Walczyk had once lived there.   Indeed, the warrant, as stated above, deliberately omitted the key fact that Thomas Walczyk had not lived at 27 Tunxis Street for at least seven years.  Thus, it is patently unreasonable to speculate about whether, maybe, Thomas Walczyk stored weapons at his parents home, or that, because it was his parents  house, that he had access to their weapons.  None of the allegations contained in the warrant referenced *Lucian* Walczyk s guns at all.  The warrant presents *no* facts to support probable cause that Thomas Walczyk would commit a  bloodbath  using weapons found at 27 Tunxis Street.  Further, upon entering 27 Tunxis Street, the officers were informed that all of the firearms located therein belonged to Lucian Walczyk, not Thomas Walczyk.  Rather than halting the search and undertaking further investigation (a simple records check or further questioning would likely have been sufficient to dispel any doubts), the defendants expressly chose to ignore their mistake, and continued their search uninterrupted, intrusively videotaping Lucian and Elizabeth Walczyk as well as every room in their house, despite the fact that both Elizabeth and Lucian informed the officers that the firearms were all located in the attic.  The search of Elizabeth Walczyk s home was unreasonably intrusive and illegal and summary judgment should be granted

-25-

on Elizabeth Walczyk s fourth amendment claim.

## IV.    MAXIMINA AND MICHELLE WALCZYK ARE ENTITLED TO SUMMARY JUDGMENT AS TO THEIR CLAIMS.

Maximina and Michelle Walczyk s claims alleging an unreasonable search and seizure at 28 Tunxis Street, are derivative of - and co-extensive with - the fourth amendment claims of plaintiff Thomas Walczyk. Therefore, they rely on the arguments set forth in Sections II-A, II-B and II-C of this memorandum. As stated above, in Section II-A *supra*, the search of 28 Tunxis Street and the seizure of Thomas Walczyk s firearms was not supported by probable cause and was, therefore, illegal. The defendants treatment of Michelle and Maximina Walczyk during that illegal search, rather than mitigating the defendants unreasonableness, exacerbated it. As they entered 28 Tunxis Street, Maximina Walczyk informed the officers that Michelle was sick with a stomach virus, and was running a fever. (Exhibit Q, pp. 23-24; Exhibit R pp. 7-9). Despite this objection, the police ordered both Michelle and Maximina out of the house into the pouring rain.

Even presuming that the officers were legitimately entitled to search, an assertion the plaintiffs clearly dispute, there is absolutely no reason that Michelle and Maximina needed to vacate the premises while the officers searched for lawfully registered firearms. It would have been much more reasonable to immediately search the couch upon which Michelle was resting and then allow Michelle to return to the couch for the duration of the search of the home. The defendants conduct was clearly unreasonable and summary judgment should be granted on this claim, as well.

### CONCLUSION

For the foregoing reasons, the plaintiffs motion for summary judgment should be granted on all counts.

THE PLAINTIFFS,

-26-

By: _____
Jon L. Schoenhorn ct00119
Their Attorney
Jon L. Schoenhorn & Associates
97 Oak Street, Hartford, CT 06106
Tel (860) 278-3500

**<u>CERTIFICATION</u>**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 2nd day of February, 2004 to the following counsel of record:

Thomas R. Gerarde, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
Tel. (860) 249-1361

_____
Jon L. Schoenhorn

F:\SHARED\CLIENTS\Walczyk-Civil\SJ Memo.wpd