UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS WALCZYK, ELIZABETH WALCZYK, MAXIMINA WALCZYK, individually and as P.P.A. for MICHELLE WALCZYK, a minor child, | : : : : : | CIVIL ACTION NO. 3:02CV1537 (RNC) |
| Plaintiffs | : : | |
| v. | : : | |
| JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN, WILLIAM TYLER, ANGELA DESCHENES AND SHAWN BROWN, | : : : : | |
| Defendants | : | February 2, 2004 |

## PLAINTIFF S LOCAL RULE 56(a)1 STATEMENT

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, the Plaintiffs file this statement of undisputed material facts in support of their Motion for Summary Judgment.

1. In August and September 1999, Plaintiff Thomas Walczyk lived with his wife, Plaintiff Maximina Walczyk, and their four children ages 17, 14, 11 and Plaintiff Michelle Walczyk, 8, in a single-family home located at 28 Tunxis Street, Farmington.  (Exhibit A, pp. 5-7; ).

2. In August and September 1999, Plaintiff Thomas Walczyk s parents, Lucian and Plaintiff Elizabeth Walczyk, lived almost directly across the street at 27 Tunxis Street, Farmington. (Exhibit A, pp. 17-18).

3. Plaintiff Thomas Walczyk had not lived with his parents at 27 Tunxis Street since at least 1992.  (Exhibit A, pp. 6; Exhibit J, pp. 72).

4. For several years prior to August 1999, Thomas Walczyk and his parents had been involved in a protracted legal dispute with the Barberino Realty and Development Corporation over land adjacent to the Walczyk s property.  (Exhibit A, pp. 7-16).

5. The dispute revolved around the Walczyks  claims to quiet title and the exercise of ownership and/or farming rights derived therefrom.  (Exhibit A, pp. 7-16).

6. Lucian and Elizabeth Walczyk had previously entered into a stipulated agreement with Barberino which gave them certain rights to the land. (Exhibit A, pp. 48-50; Exhibit J, pp. 25-26).

7. Thomas Walczyk s separate claim was adjudicated adversely to him, and his only continued interest in the disputed land was derivative of that of his parents. (Exhibit A, pp. 7-16).

8. Farmington Police officials were aware of this land dispute because Thomas had contacted them in the past concerning damage by Barberino work crews. (Exhibit A, pp. 40-41).

9. On August 30, 1999, Thomas Walczyk was walking on his own property when he noticed that a locked gate with a no trespassing sign had been knocked down and a logging skidder was parked on the property. (Exhibit A, pp. 61-62).

10 Thomas Walczyk returned to his house and asked his adult daughter to videotape the damage in order to document it. (Exhibit A, pp. 73-74).

11. Thomas Walczyk called the Farmington Police to report a trespass on his property at approximately 10:00 am on August 30, 1999. (Amended Complaint and Answer ¶12; Exhibit A, pp. 61-62).

12. About ten minutes later, on August 30, 1999 Officer David Hebert of the Farmington Police Department arrived at Thomas Walczyk s house, followed shortly thereafter by a police supervisor. (Exhibit A, pp. 73, 76).

13. Upon observing the damage and listening to Thomas Walczyk s complaint, Hebert asked Walczyk if he could produce title to the land in question. Walczyk was unable to do so for the reasons previously stated. Hebert stated that he could not do anything if the property ownership was in dispute. (Exhibit B).

14. At some point during the August 30, 1999 conversation, while attempting to impress upon Officer Hebert the importance of enforcing the law, Walczyk remarked that  trespass laws were enacted to avoid bloodshed and that the police were not taking the action needed to avoid a bloodbath.  (Exhibit B; Amended Complaint and Answer ¶13).

15. While this comment annoyed Hebert, he never feared for his safety, and took no enforcement action, because he did not believe that Walczyk, who neither mentioned a weapon nor carried one, committed any crime. (Exhibit C, pp. 29, 46, 48).

16. Hebert warned the plaintiff not to interfere with any activity on the disputed property or he could face arrest. (Exhibit C, pp. 50-51).

17.     During the approximately thirty minutes Hebert was with Walczyk, Walczyk did not display, indicate, or mention a firearm or other weapon of any sort. (Exhibit C, pp. 39-40, 43, 52).

18.     Despite Officer Hebert's conclusion that no crime had been committed, on September 4, 1999, Defendants Tyler, Rio and Deschenes reviewed Hebert's report and, after consulting with each other, decided to procure a search and seizure warrant and an arrest warrant for Thomas Walczyk for the crime of threatening, a violation of Connecticut General Statutes § 53a-62. (Exhibit D, 32-35; Exhibit K, pp. 11-12; Exhibit L, pp. 10-11, 25-28).

19.     Without ever speaking to Officer Hebert, Defendant Tyler decided a crime had occurred, prepared applications for these two warrants, and then signed the arrest warrant affidavit himself. (Exhibit D, pp. 29-30).

20.     Tyler then cut and pasted the information in the arrest warrant application into the search warrant application and gave the already-prepared application for a search warrant to Defendants Shawn Brown and Angela Deschenes, who signed the search warrant affidavit under oath. (Exhibit D, pp. 62-64; Exhibit F).

21.     Both Defendant Brown and Defendant Deschenes admitted having no involvement in the preparation of either warrant application and merely signed off based on the representations and/or orders of Tyler and Rio. (Exhibit L, pp. 30-32; Exhibit M, pp. 14-17).

22.     Neither Defendant Deschenes nor Defendant Brown independently investigated or verified any of the information in the search warrant to verify its accuracy, or to determine the outcome of any of the uncharged misconduct alleged in the warrant applications. (Exhibit L, pp. 30-31; Exhibit M, pp. 19-20).

23.     Defendants Brown and Deschenes then went to the home of a Connecticut Superior Court judge in West Hartford to obtain judicial authorization for these warrants. (Exhibit L, pp. 57-58).

24.     Defendants Deschenes, and Brown were interrupting a wake for the judge's recently deceased mother when they arrived to present the judge with the warrant applications. The judge signed both warrants. (Exhibit L, pp. 57-58).

25.     On September 4, 1999, an arrest warrant for the arrest of Thomas Walczyk on the charge of threatening was issued by a Superior Court judge, based upon the previously referenced affidavits. (Amended Complaint and Answer ¶18; Exhibit S).

26.     On September 4, 1999, a single search warrant seeking "all firearms" was issued; for both Thomas Walczyk's residence at 28 Tunxis Street, Farmington, and for the residence of Lucian

and Elizabeth Walczyk's, at 27 Tunxis Street, Farmington. Both warrants were executed on September 7, 1999. (Exhibit F; Exhibit G; Exhibit N, 20-23; Exhibit K, p.37; Exhibit Q, p.14; Amended Complaint and Answer ¶17).

27. Acting pursuant to the arrest warrant, the police lured Thomas Walczyk to the Farmington Police station by telephoning him and falsely inviting him to come to the station to discuss the property dispute. (Exhibit A, pp. 78-81; Exhibit N, pp. 17, 18, 20-22).

28. This invitation was a ruse as the police had no intention of discussing the property dispute with Walczyk, and wanted only to keep him locked up during the search of his home and that of his parents. (Exhibit E; Exhibit N, pp. 17, 18, 20-22).

29. Once Thomas Walczyk arrived at the Farmington Police department, defendant Tyler placed him under arrest and removed him to the cellblock, where he was held on a bond sufficiently high that it prevented his release during the searches at 27 and 28 Tunxis Street, Farmington. (Exhibit N, p. 22; Exhibit D, pp. 86-88; Exhibit H).

30. The Farmington Police called upon the West Hartford Police SWAT team to assist in the execution of the searches, and West Hartford agreed. Several West Hartford SWAT members took part in the searches. (Exhibit O, pp. 12-14, 16, 18-19; Exhibit P, pp. 8-9; Exhibit T).

31. At approximately the same time Plaintiff Thomas Walczyk was being placed under arrest, several officers from both the Farmington and West Hartford Police departments, including defendants Killiany and Jepsen, executed the search warrant at 27 and 28 Tunxis Street, Farmington, searching for firearms. (Exhibit N, p. 24; Amended Complaint and Answer ¶22).

32. Plaintiffs Maximina and Michelle Walczyk were present at their home at 28 Tunxis Street, Farmington when the police arrived to execute the search warrant. (Exhibit Q, pp. 20-23).

33. At the time of the search, Michelle Walczyk, age 8, was home from school, suffering from a stomach virus, and was running a fever. Upon arrival at 28 Tunxis Street, the police entered the house, despite the objections of Maximina Walczyk who protested because of her sick child. (Exhibit Q, pp. 22-24).

34. Despite the fact that it was pouring rain at the time, the police ordered Maximina to take Michelle out of the home, refusing, however, to allow her to go to her grandparents' home across the street. (Exhibit Q, p. 29).

35. At Thomas Walczyk's home, the police seized handguns and rifles, some rare collector's items, that were all lawfully registered and not in violation of any laws. In addition to firearms, the police also seized a number of items not listed in the warrant, including approximately

2,600 rounds of ammunition, canteens, ammunition belts and other items.  (Exhibit G; Exhibit A, pp. 32-33, 141-42; Exhibit T).

36. Farmington and West Hartford police officers entered Elizabeth Walczyk's home, 27 Tunxis Street, and searched it for firearms, despite the protestations of both Elizabeth and Lucian that none of the guns at 27 Tunxis Street belonged to Thomas Walczyk.  (Exhibit J, pp. 29-30, 34-35).

37. Through the course of the search at 27 Tunxis Street, Farmington, the police seized six handguns, nine rifles, three shotguns and one gun case, all of which belonged to Lucian Walczyk, Thomas Walczyk's late father.  (Exhibit J, pp. 64-65).

38. During the searches members of the police departments were videotaping the interior and the exterior of both homes.  (Amended Complaint and Answer ¶23; Exhibit J, pp. 64-65).

39. At some point during the time he was in custody on September 7, 1999, Thomas Walczyk was charged with the additional crimes of disorderly conduct, reckless endangerment in the second degree and risk of injury to a minor, plus six infraction counts of improper storage of a firearm.  (Amended Complaint and Answer ¶27; Exhibit I).

40. At trial Thomas Walczyk was acquitted of the felony charges, but appealed his misdemeanor and infraction charges.  He was ultimately exonerated of all charges in the appeal. (*See State v. Walczyk*, 76 Conn. App. 169 (2003)).

41. Lucian Walczyk died in 2002.  He asked his wife, Elizabeth, on his death bed whether his prized gun collection had been returned.  (Exhibit J, pp. 74-75).

42. None of the defendants involved in the preparation of the arrest and search warrant affidavits made any effort whatsoever to determine the outcome of any earlier arrest incidents referenced in the affidavits.  (Exhibit L, pp. 30-32; Exhibit M, pp. 19-20).

43. All of the earlier criminal charges mentioned in the search and arrest warrant affidavits were either dropped or reduced to minor offenses.  (Exhibit A, pp. 50-52, 54-56; 57-60).

44. Knowing that Thomas Walczyk had last resided at 27 Tunxis Street, Farmington in 1992 or earlier would have made a difference to defendant Shawn Brown, had Brown actually investigated and prepared the warrant affidavits that he signed, he would have deemed this information material and would have included it.  (Exhibit M, pp. 40-41).

45. None of the defendants investigated or included the dispositions or outcomes of any of the allegations of prior misconduct contained in the arrest and search warrant affidavits.  (Exhibit L, pp. 30-32; Exhibit M, pp. 14-17).

46. The police set bail of $1,000.00 on the threatening charge and awaited the results of the search. At some point while Thomas Walczyk was still detained by the Farmington Police Department, the defendants brought additional charges and increased the bail to $10,000.00. (Exhibit H; Exhibit A pp. 90-91).

47. The defendant, James Rio, is and was at all relevant times, an employee of the Town of Farmington, Connecticut, serving in the capacity of captain for the Farmington Police Department. (Amended Complaint and Answer ¶4).

48. The defendant, Brian Killiany, is and was at all relevant times, an employee of the Town of Farmington, Connecticut, serving in the capacity of detective for the Farmington Police Department. (Amended Complaint and Answer ¶5).

49. The defendants, James Jepsen and William Tyler, are and were at all relevant times, employees of the Town of Farmington, Connecticut, both serving in the capacity of sergeant for the Farmington Police Department. (Amended Complaint and Answer ¶6 and ¶7).

50. The defendant, Angela Deschenes, is and was at all relevant times, an employee of the Town of Farmington, Connecticut, serving in the capacity of corporal of the Farmington Police Department. (Amended Complaint and Answer ¶8).

51. The Defendant Shawn Brown, is and was at all relevant times, an employee of the Town of Farmington, Connecticut, serving in the capacity of officer of the Farmington Police Department. (Amended Complaint and Answer ¶9).

                    THE PLAINTIFFS,

By: _____
    Jon L. Schoenhorn  ct00119
    Jon L. Schoenhorn & Associates
    97 Oak Street, Hartford, CT 06106
    Tel. (860) 278-3500

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing was mailed first class, postage prepaid, to the following counsel of record, this 2nd day of February 2004:

Thomas R. Gerarde, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
Tel. (860) 249-1361

                                                                                          Jon L. Schoenhorn