UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS WALCZYK, ET AL | : | NO.: 3:02 CV 1536 (RNC) |
| v. | : | |
| JAMES RIO, ET AL | : | FEBRUARY 2, 2004 |

## LOCAL RULE 56 STATEMENT IN SUPPORT OF DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

The defendants, JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN, WILLIAM TYLER, ANGELA DESCHENES and SHAWN BROWN, submit the following statement of material facts not in dispute pursuant to D.Conn.L.R. 56(c) and Fed.R.Civ.P. 56.

The present Local Rule 56 Statement is submitted in support of the following:

- Defendants' Motion for Summary Judgment as to the plaintiff Thomas Walczyk dated February 2, 2004

- Defendants' Motion for Summary Judgment as to the plaintiff Elizabeth Walczyk dated February 2, 2004

- Defendants' Motion for Summary Judgment as to the plaintiffs Maximina and Michelle Walczyk dated February 2, 2004

As required by local rule, admissible evidence in the form of exhibits and affidavits attached hereto are provided in support of this statement.

1. The plaintiff, Thomas Walczyk, currently resides at 28 Tunxis Street, Farmington, CT and has resided at that location since 1992 or 1993. **Exhibit A, Dep. Thomas Walczyk, pp. 5-6.**

2. Thomas Walczyk claimed that an adjoining parcel of land to 28 Tunixs Street belonged to him. However, by 1997 or 1998, the Connecticut Supreme Court, by refusing to grant certiorari, put finality on the decision

that the land did not belong to him. **Exhibit A, Dep. Thomas Walczyk, p. 9-12.**

3. Thomas filed a lawsuit claiming he had title to the disputed land by virtue of adverse possession. He filed suit in 1995 and not only lost on his principal claim, <u>Walczyk v. Barberino Realty & Development Corporation</u>, 1996 Ct. Sup. 990, 16 CLR 34, J.D. of Hartford/New Britain at New Britain, (Jan. 10, 1996, *Arena, J.*) (**Exhibit R1**) but Barberino Realty counterclaimed to quiet title and judgment was entered in favor of Barberino, <u>Walczyk v. Barberino Realty & Development Corporation,</u> 1997 Ct. Sup. 3126, J.D. of Hartford/New Britain at New Britain, (May 14, 1997, *Keller, J.*), **Exhibit R2.**

4. By 1998 had lost all appeals. <u>Walczyk v. Barberino Realty & Development Corporation</u>, 48 Conn. App. 911, 719 A.2d 1233 (1998). **Exhibit R3**. The Connecticut Supreme Court refused to grant Walczyk's petition for certiorari. <u>Walczyk v. Barberino Realty & Development Corporation</u>, 245 Conn. 904, 719 A.2d 1165, *cert. denied* (1998). **Exhibit R4.**

5. From about 1980-1992 or 1993, Thomas Walczyk, along with his family, liked at 27 Tunxis Street in an apartment over the garage. **Exhibit A, Dep. Thomas Walczyk, p. 16.** Thomas Walczyk grew up at 27 Tunxis Street. **Exhibit A, Dep. Thomas Walczyk, p.18.**

6. Thomas's father, Lucien Walczyk, died on July 10, 2001, prior to the commencement of the present lawsuit. **Exhibit A, Dep. Thomas Walczyk, p. 18.**

7. Thomas Walczyk was never in the active military service of the United States or the reserve. **Exhibit A, Dep. Thomas Walczyk, p.25.**

8. In 1988, Thomas was arrested on the charges of Threatening, Reckless Endangerment in the First Degree, and Interfering with a Police Officer after he confronted surveyors and other workers from Barberino Realty. Thomas approached the men with a loaded AR-15 (civilian model M-16).

2

The weapon had thirty (30) rounds in the clip and one round was locked and loaded, ready to fire. After the Farmington Police arrived, Thomas initially refused the officers' lawful commands to drop the weapon. Despite having two officers pointing their service weapons at him, Thomas refused to drop his weapon and continued to yell about trespassing and some state statute. Even after lowering his weapon, Thomas was uncooperative during the protective frisking phase and had to be physically restrained and handcuffed. At the time of this incident, Thomas lived at 27 Tunxis Street. **Exhibit J; Exhibit A, Dep. Thomas Walczyk, p. 40-3.**

9. As to incident number 88-4505 (attached to Defendants Local Rule 56(c)(1) Statement as **Exhibit J**), Thomas Walczyk was originally charged with violations of Conn. Gen. Stat. §53a-22, Threatening, Conn. Gen. Stat. §53a-63, Reckless Endangerment in the First Degree by substitute information, and Conn. Gen. Stat. §53a-167a, Interfering with a Police Officer by substitute information. In this incident, Walczyk plead guilty to a violation of Conn. Gen. Stat. §53-181, Creating a Public Disturbance. **Exhibit Q, Aff. Rio, ¶21; Exhibit A, Dep. Thomas Walczyk, p. 40-3.**

10. In 1990, a Farmington resident followed Thomas in his motor vehicle back to his residence at 27 Tunxis Street after Thomas cut the resident off while driving. Seeing the person following him, Thomas went inside his residence and returned with a loaded AK-47 (Soviet model assault rifle). Thomas was charged with Threatening. **Exhibit K; Exhibit A, Dep. Thomas Walczyk, p. 50-55.**

11. As to incident number 90-7735 (attached to Defendants Local Rule 56(c)(1) Statement as **Exhibit K**), Thomas Walczyk was originally charged with a violation of Conn. Gen. Stat. §53a-22, Threatening. The State's Attorney later entered a disposition of *nolle prosequi* as to this charge. **Exhibit Q, Aff. Rio, ¶22; Exhibit A, Dep. Thomas Walczyk, p. 50-55.**

12. In 1992, Thomas was charged with Breach of Peace, Unlawful Discharge of a Firearm, and Conspiracy to Commit Cruelty to Animals after a neighbor saw Thomas shoot his cat. Upon investigation, officers found two dead cats. **Exhibit L; Exhibit A, Dep. Thomas Walczyk, p. 55-60.**

13. As to incident number 92-1741(attached to Defendants Local Rule 56(c)(1) Statement as **Exhibit L**), Walczyk was originally charged with violations of Conn. Gen. Stat. §53a-247, Cruelty to Animals, Conn. Gen. Stat. §53a-203, Unlawful Discharge of a Firearm by substitute information, and Conn. Gen. Stat. §53a-48, conspiracy to Commit cruelty to animals by substitute information. In this incident, Walczyk plead guilty to a violation of Conn. Gen. Stat. §53a-181, Breach of Peace. At the time of this incident, Thomas lived at 27 Tunxis Street. **Exhibit Q, Aff. Rio, ¶23; Exhibit A, Dep. Thomas Walczyk, p. 55-60.**

14. In 1996, Thomas was almost charged after an altercation with his brother, John. Thomas and John had an argument over Thomas' efforts to dispute land Barberino Realty. John complained that Thomas pushed him twice during the argument. John called police and made a report even though he did not feel in fear of imminent physical injury. John was concerned because his brother Thomas owns several guns and could act on the threat. **Exhibit M; Exhibit A, Dep. Thomas Walczyk, p. 60.**

15. As to incident number 96-2716(attached to Defendants Local Rule 56(c)(1) Statement as Exhibit M), no charges were brought against Walczyk. **Exhibit Q, Aff. Rio, ¶24.**

16. On August 30, 1999, Officer Hebert was dispatched to 28 Tunxis Street and met with Thomas Walczyk. At that time, Thomas told Officer Hebert that people were trespassing on his property. However, Thomas admitted he could not produce a deed to the property when asked to prove his ownership. When Officer Hebert did not arrest the alleged trespassers, Thomas told Officer Hebert that the police were not taking the steps

necessary to avoid a bloodbath. **Exhibit N; Exhibit T, Trial Transcript, p. 29, 46, 49, 56, 330, 336; Exhibit A, Dep. Thomas Walczyk, p. 61-68, 77.**

17. Captain Rio directed Sgt. Tyler to prepare the arrest and search warrants and had no other participation in the search or arrest. **Exhibit E, Dep. Capt. Rio, p. 10.** Sergeant Jepsen had no role in the preparation of the applications for the arrest or search warrants. Exhibit H, Dep. Jepsen, p. 14-5.

18. Captain Rio was at the search planning meeting on the morning of September 7, 1999. **Exhibit E, Dep. Capt. Rio, p. 10-12.**

19. Captain Rio spoke with State's Attorney John O'Reilly regarding his opinion of probable cause for the arrest and search warrants and Attorney O'Reilly agreed that probable cause existed to obtain arrest and search warrants based on the events contained in Officer Hebert's report. **Exhibit E, Dep. Capt. Rio, p. 13, 15, 19-21, 22-3.**

20. Rio knew that Thomas Walczyk had displayed firearms to others, including the police, in the past. **Exhibit E, Dep. Capt. Rio, p. 24.**

21. The officers executing the search warrant spoke with State's Attorney Brodsky who authorized seizure of other items not named in the warrant. **Exhibit E, Dep. Capt. Rio, p. 39; Exhibit H, Dep. Jepsen, p. 27-8, 30-33.**

22. Captain Rio did not participate in the search and was not present on Tunxis Street on September 7, 1999. **Exhibit E, Dep. Capt. Rio, p. 55-58.**

23. The $10,000 bond for Thomas Walczyk's release was based on the subsequent charges which were levied after the Search. **Exhibit E, Dep. Capt. Rio, p. 58; Exhibit F, Dep. Sgt. Tyler, p. 88.** The additional charges were, among others, risk of injury to a minor and reckless endangerment, all of which arose from the evidence uncovered during the search. **Exhibit F, Dep. Sgt. Tyler, p. 91-3.**

24. Videotaping the execution of a search warrant is standard operating procedure. **Exhibit E, Dep. Capt. Rio, p. 63; Exhibit H, Dep. Jepsen, p 25.**

25. Sergeant Tyler never met Thomas Walczyk until he was arrested in September 7, 1999. **Exhibit F, Dep. Sgt. Tyler, p.6.**

26. However, Sergeant Tyler knew of Walczyk from other officers, **Exhibit F, Dep. Sgt. Tyler, p. 6-7,** and Sergeant Tyler knew of Walczyk from the review of reports, **Exhibit F, Dep. Sgt. Tyler, p. 7-8.**

27. As part of her duties, Corporal Deschenes read incident reports filed by subordinate officers and she read Officer Hebert's report (**Exhibit N**). **Exhibit G, Dep. Cpl. Deschanes, p. 6-7.**

28. Based on her knowledge of Thomas Walczyk, she thought the events portrayed in Officer Hebert's report, Cpl. Deschenses though this might be a problem. **Exhibit G, Dep. Cpl. Deschanes, p. 6-8.** Cpl. Deschanes knew about Thomas Walczyk and the 1988 incident from word of mouth. **Exhibit G, Dep. Cpl. Deschanes, p. 16-7**, but she never met Thomas or Lucian Walczyk, **Exhibit G, Dep. Cpl. Deschanes, p. 25.**

29. Officer Brown had no involvement in the August 1999 incident or the September 7, 1999 search other than his signature on the application fro the search warrant. **Exhibit I, Dep. Ofc. Brown, p 6.** Officer Brown and Cpl. Deschenes took the search warrant application to Judge Norko for review and approval. **Exhibit I, Dep. Ofc. Brown, p 25-6.**

30. Officer Brown has never met any member of the Walczyk family. **Exhibit I, Dep. Ofc. Brown, p 7.** Other than his review of the relevant documents, Officer Brown reasonably relied on information received from brother and sister law enforcement officers in the course and scope of their respective employment. **Exhibit I, Dep. Ofc. Brown, p 7, 47.**

31. Bryan Royce is currently a lieutenant employed the Town of West Hartford Police Department. **Exhibit S, Dep. Royce, p. 3.** Lieutenant Royce has been employed as a police officer for 16 years. **Exhibit S, Dep. Royce, p. 4.** In 1999, then-Sergeant Royce was in command of the West Hartford Police Department SWAT unit, a group that deals with hostage situations, high-risk warrant service and barricaded subjects in addition to other special situations. **Exhibit S, Dep. Royce, p. 7-8.** High-risk warrant service typically involves the service of a warrant on a suspect that has a history of past violence and owns weapons. **Exhibit S, Dep. Royce, p. 8.**

32. Royce believes that Captain Rio requested the assistance of the West Hartford SWAT unit to help execute the warrants on Tunxis Street and West Hartford responded after the assistance was approved by the Chief of Police of West Hartford under the mutual aid agreement between West Hartford and Farmington. **Exhibit S, Dep. Royce, p. 14, 15, 18.**

33. Royce and other members of the West Hartford SWAT unit reconnoitered Tunxis Street to be certain they knew which houses to visit and they early on the morning of the raid to decide to invite Thomas Walczyk to the police station instead of arresting him at his residence. **Exhibit S, Dep. Royce, p. 14, 26-7.**

34. Royce suggested inviting Walczyk down to the Farmington Police Headquarters as a safety measure. **Exhibit E, Dep. Capt. Rio, p.55, 57; Exhibit S, Dep. Royce, p. 27.** Sergeant Jepsen made the call to Thomas Walczyk. **Exhibit H, Dep. Jepsen, p. 18.**

35. On the day the warrants were executed, both the West Hartford and Farmington officers were dressed in their regular police uniforms. They did not wear SWAT or paramilitary uniforms or display SWAT or paramilitary gear. **Exhibit S, Dep. Royce, p. 25-6.** When they executed the warrants, the officers involved did not make some stealthy approach; they just

walked up to the residences and rang the door bell. **Exhibit S, Dep. Royce, p. 36.**

36. Royce did not observe anything that would lead him to believe that any of the Farmington Officers bore any ill-will, malice or animus towards Thomas Walczyk because of his firearms collection. **Exhibit S, Dep. Royce, p. 50.**

37. After being asked by Sergeant Jepsen to come down to the Farmington Police Headquarters to discuss the land dispute, Walczyk brought documents relating to his parents successful 1991 lawsuit, not the lawsuit he brought and which was disposed unfavorable to him in 1997 or 1998. **Exhibit A, Dep. Thomas Walczyk, p.79-80.**

38. Walczyk believes he arrived at the Farmington Police Headquarters around noontime and was not released until several hours later. Walczyk was booked or processed twice; once for the charge in the warrant and a second time for charges that were made based on evidence uncovered during the execution of the search warrant. **Exhibit A, Dep. Thomas Walczyk, p. 87-9.**

39. At some point, Walczyk called his wife, Maximina, to post his bail. **Exhibit A, Dep. Thomas Walczyk, p. 89.** Maximina arrived with his mother, Elizabeth, and Elizabeth posted bond. **Exhibit A, Dep. Thomas Walczyk, p.89-91.**

40. Walczyk has no evidence of animus against him by either Captain Rio or Sergeant Tyler. **Exhibit A, Dep. Thomas Walczyk, p.148-9.** Prior to that day, Walczyk had never seen Sergeant Tyler. **Exhibit A, Dep. Thomas Walczyk, p.150-1.**

41. Walczyk admits his firearms were returned to him after the Connecticut Appellate Court issued its decision in <u>State v. Walczyk</u>. Walczyk admits that the State Criminal Court ordered the firearms held and the Farmington Police Department was powerless to release the weapons

       absent a court order. **Exhibit A, Dep. Thomas Walczyk, p. 162-3, 163-4, 172-4.**

42. Maximina was at home with her daughter, Michelle, when the search warrant was executed at her home. **Exhibit B, Dep. Maximina Walczyk, p.23.** Michelle was at home because she was ill. **Exhibit B, Dep. Maximina Walczyk, p.24-6; Exhibit C, Dep. Michelle Walczyk, p. 7-9.**

43. The police officers told Maximina that they had a search warrant. **Exhibit B, Dep. Maximina Walczyk, p.27.** Maximina and Michelle were free to leave at any time. **Exhibit B, Dep. Maximina Walczyk, p.31.** Maximina and Michelle were told they could not interfere with the search. **Exhibit B, Dep. Maximina Walczyk, p. 32.** One of the officers present told Maximina that she could take Michelle to a neighbor's house, which she did. **Exhibit B, Dep. Maximina Walczyk, p.32-3; Exhibit C, Dep. Michelle Walczyk, p. 11-12.** While Maximina was in her house and the search was taking place, a West Hartford officer followed her around the house, watching what she was doing. **Exhibit B, Dep. Maximina Walczyk, p. 35-7.**

44. The officers who searched her house did not break anything. **Exhibit B, Dep. Maximina Walczyk, p. 77.** The officers who searched her house upset some folded clothing but they did not dump anything on the floor. **Exhibit B, Dep. Maximina Walczyk, p. 48-50.** Some things were moved, but nothing was damaged. **Exhibit B, Dep. Maximina Walczyk, p. 51-2.**

45. When the police arrived at 27 Tunxis Street, Lucian Walczyk and Elizabeth Walczyk were having lunch, **Exhibit D, Dep. Elizabeth Walczyk, p.31-2**, and the police announced they had a search warrant. **Exhibit D, Dep. Elizabeth Walczyk, p. 33.** Lucian agreed to surrender his firearms to the police officers. **Exhibit D, Dep. Elizabeth Walczyk, p. 35.** Elizabeth gave the key to the gun cabinet to the police and they removed the weapons. **Exhibit D, Dep. Elizabeth Walczyk, p. 36-8.**

46. The police kept their weapons in their holsters and did not point weapons at Lucian or Elizabeth. **Exhibit D, Dep. Elizabeth Walczyk, p. 41-3.** Neither Lucian nor Elizabeth was handcuffed, and the officers were not rude to them. **Exhibit D, Dep. Elizabeth Walczyk, p. 41-44.**

47. The officers left 27 Tunxis Street about 3:00 pm. Exhibit D, Dep. Elizabeth Walczyk, p. 45.

48. At some point, Maximina called the Farmington Police Department and received information that her husband was under arrest and that he needed to post bond to be released, **Exhibit B, Dep. Maximina Walczyk, p. 66**, but she never told anyone she could not post the amount of the bond, **Exhibit B, Dep. Maximina Walczyk, p.65-7.**

49. Maximina drove to the Farmington Police Headquarters with her mother-in-law, Elizabeth, Exhibit B, Dep. Maximina Walczyk, p.69; Exhibit D, Dep. Elizabeth Walczyk, p. 47. Elizabeth believes she paid $1,000 to a bondsman to post her son's bond. **Exhibit D, Dep. Elizabeth Walczyk, p. 47-9.**

50. At the time the firearms were seized from 27 Tunxis Street, the firearms did not belong to Elizabeth; the firearms belonged to Lucian. **Exhibit D, Dep. Elizabeth Walczyk, p. 55.** The firearms did not belong to Elizabeth until after Lucian's death on July 10, 2001. **Exhibit D, Dep. Elizabeth Walczyk, p. 80.**

51. Following the seizure, Lucian did nothing to get his firearms released from the Farmington Police Department. **Exhibit D, Dep. Elizabeth Walczyk, p.53-8.**

52. Elizabeth did not take any steps to obtain the firearms until August 2002 when she hired Attorney Schoenhorn. Attorney Schoenhorn filed a motion in Thomas Walczyk's criminal case sometime in August or September 2002. **Exhibit D, Dep. Elizabeth Walczyk, p. 80-2.**

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN, WILLIAM TYLER, ANGELA DESCHENES and SHAWN BROWN

/s/ John J. Radshaw, III
Thomas R. Gerarde, ct05640
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT 06114
(860) 249-1361
(860) 249-7665 (fax)

**CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 2nd day of February 2004.

Jon L. Schoenhorn, Esquire
Jon L. Schoenhorn & Associates
97 Oak Street
Hartford, CT 06106

/s/ John J. Radshaw, III
John J. Radshaw, III