UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS WALCZYK, ELIZABETH WALCZYK, MAXIMINA WALCZYK, individually and as P.P.A. for MICHELLE WALCZYK, a minor child, | : : : : : | CIVIL ACTION NO. 3:02CV1537 (RNC) |
| Plaintiffs | : : | |
| v. | : : | |
| JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN, WILLIAM TYLER, ANGELA DESCHENES AND SHAWN BROWN, | : : : : | |
| Defendants | : | MARCH 24, 2004 |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT AS TO THE CLAIMS OF ELIZABETH WALZCZYK**

**Statement of Facts**

The plaintiffs incorporate by reference the summary of facts set forth in their Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment dated February 2, 2004.

Elizabeth Walczyk's deceased husband's valid Last Will and Testament dated May 4, 2001 devised all personal property to his wife. (Plaintiffs' Exhibit U.) Motions were filed by Elizabeth and Lucian Walczyk for the return of their seized property. Subsequent to Lucian's death a motion was made on behalf of Elizabeth Walczyk to bring about the return of the unlawfully seized firearms. (Plaintiffs' Exhibit V; Plaintiffs' Exhibit W.)

**Standard for Summary Judgment**

1

The plaintiffs incorporate by reference their standard for summary judgment in their Objection to Defendants Motion for Summary Judgment as to the Claims of Thomas Walczyk.

**Fourth Amendment Claim**

The Fourth Amendment to the United States Constitutions states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

However, the defendants in this case fail to realize that the aforementioned constitutional provision protects individuals from unreasonable searches *and* seizures. The United States Supreme Court held in Steagald v. United States, 451 U.S. 204, 213 (1981) that under the purview of the fourth amendment a search warrant is, issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police. The language of *Steagald*, and the Fourth Amendment, illustrates the availability of both a search and a seizure claim to plaintiffs, such as in the instant case. Elizabeth is asserting her constitutional rights based not only on the unlawfully seized firearms but also the illegal and intrusive search of her home. There is no disputing that the Farmington Police entered Elizabeth s home and thereafter conducted a search despite the protestations of both Elizabeth and Lucian that no firearms belonging to Thomas were located at the 27 Tunxis Street address, and that Thomas had not lived there in over seven years.

The defendants claim, that Elizabeth lacks standing to assert the aforementioned constitutional claim, and other such claims that steam from the unlawful action which gave rise thereto. However, in *Payton v. New York, supra, 445 U.S. at 573 (1980)* the United States Supreme Court reaffirmed the overarching significance, under the fourth amendment, of the sanctity of the home thereby illustrating that the unreasonable actions of the Defendants violated Elizabeth Walczyk's right to privacy in her home. The court in *Payton* states:

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home - a zone that finds its roots in clear and specific constitutional terms: "The right of the people to be secure in their . . . houses . . . shall not be violated." That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. *Quoting Silverman v. United States,* 365 U. S. 505, 511.

Clearly not even the defendants would be so bold as to suggest that Elizabeth doesn't have a reasonable expectation of privacy in her own home. Therefore, the defendants' claim that Elizabeth Walczyk lacks standing to assert a fourth amendment claim are without merit.

**Second Amendment Claim**

The defendants argue that Elizabeth Walczyk does not have standing to bring a Second Amendment claim because her husband, and consequently not her, owned the illegally seized firearms on the day of the seizure. This argument fails because the deprivation of the plaintiffs' right to bear arms, under the Second Amendment, continued

even after the death of Lucian Walczyk as the firearms were still under not returned and under the control of the Farmington Police. Lucian Walczyk died on July 11, 2002. Subsequently, the firearms collection was returned to Elizabeth Walczyk after speaking with a couple different lawyers about the procedure for such a return. This is supported by the fact that Lucian asked Elizabeth on his deathbed whether the prized gun collection had been returned. (Exhibit J, pp. 74-75). By operation of her husband's will all real and personal property belonging to Lucian Walczyk, including the firearms, became the sole property of Elizabeth Walczyk on July 11, 2002. (Exhibit U.) Since Elizabeth's property rights vested prior to the return of the unlawfully seized firearms her right to bear arms under the Second Amendment was substantially interfered with.

Over the past couple years the government has come to realize that the Second Amendment establishes that the federal constitutional right broadly incorporates the individual right to possess guns for self-defense outside membership in any militia or military service. *See United States v. Emerson*, 270 F. 3d 203 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 2362 (2002). The U.S. Justice Department has adopted this view in filings to the United States Supreme Court. *See,* Brief for the United States in Opposition to Petition for Writ of Certiorari in *Emerson v. United States*, Docket No. 01-8780 (May 2002) and in *Haney v. United States*, Docket No. 018782 (May 2002). Both filings reference a Memorandum From the Attorney General to All United States Attorneys, Re: *United States v. Emerson*, Nov. 9, 2001" that sets forth the government's broad interpretation of the Second Amendment which includes a right to bear arms by those other then the militia. In the Memo Attorney General Ashcroft states that the amendment "clearly protects the right

4

of individuals to keep and bear firearms."

**Eighth Amendment Claim**

The plaintiffs do not allege an Eighth Amendment Claim with respect to plaintiff Elizabeth Walczyk.

**Fourteenth Amendment Claims   Substantive Due Process, Procedural Due Process and Equal Protection**

The plaintiffs do not allege a violation of the Fourteenth Amendment on behalf of Elizabeth Walczyk

**Qualified Immunity Does Not Apply In This Action**.

    A.    **STANDARD FOR QUALIFIED IMMUNITY**

Qualified immunity is an affirmative defense for which the defendants bear the burden of proof.  Gomez v. Toledo, 446 U.S. 635, 640, (1980).   To establish the [qualified immunity] defense at the summary judgment stage, the officers must show upon facts that are undisputed either that [their] conduct did not violate clearly established rights of which a reasonable person would have known, or that it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.  *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993), *quoting Finnegan v. Fountain*, 915 F.2d 817, 823 (2d Cir. 1990), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 73 L.Ed.2d 396, 102 S.Ct. 2727 (1982). *See also Posr v. Court Officer Shield 207*, 180 F.3d 409, 416 (2d Cir. 1999).

    B.    **PLAINTIFFS  RIGHTS TO PROTECTION FROM UNREASONABLE SEARCHES AND SEIZURES WERE CLEARLY ESTABLISHED.**

Arguably there is no constitutional right more clearly established than that requiring

5

the police to show a finding of probable cause in order to execute a search warrant of one's home.  A search warrant must pass two tests to avoid being an illegal general warrant.  It must be both specific in its commands and be supported in each of its demands by probable cause.  In United States v. Hillyard, 677 F.2d 1336 (9th Cir., 1982), the court described these requirements:

> The requirement that a warrant not be a general one is in part a function of the probable cause rule and is in part derived from the fourth amendment requirement that warrants be ones "particularly describing the place to be searched, and the persons or things to be seized.  The particularity requirement thus guards the right to be free from unbounded general searches.  The central protection has been stated as insuring that `nothing is left to the discretion of the officer executing the warrant.'
> Marron v. United States, 275 U.S. 192, 196,(1927).  Limiting discretion in this sense is the requirement that officers' actions be sufficiently circumscribed so that the magistrate issuing the warrant is fully appraised of the scope of the search, and can make the determination that the search in all of its dimensions is based upon probable cause and particular descriptions." [*Id.* at p. 196]

Officers must demonstrate that a nexus exists between the items to be seized and criminal behavior.  Warden v. Hayden, 387 U.S. 294, 307, (1967).  The plaintiffs submit that there was absolutely no nexus between firearms lawfully possessed by them, and the crime of threatening allegedly committed by Thomas Walczyk.  Applying the defendants' logic, for seizing the firearms of Thomas and his parents, there is nothing to stop the Farmington Police from seizing any item that could potentially draw blood, such as kitchen knives, gardening tools, or any potential threatening device, from any of Thomas Walczyk's neighbors.

A warrant may describe the items to be seized in generic language but probable cause requires that a warrant authorizing a search of a generic class of items

6

must contain "objective, articulated standards for the executing officers to distinguish between property legally possessed and that which is not." *Hillyard, at p. 1340.* Such a standard is most important with respect to firearms, and the lawful ownership thereof, under the Second Amendment of the U.S. Constitution and Article I, §15 of the Connecticut Constitution. In the instant case, the search warrant made no distinction between the firearms lawfully owned by Lucian and Elizabeth Walczyk and those owned by Thomas Walczyk. Simply put, the search warranted stated in a single solitary word the items to be seized, firearms.

      The doctrine of qualified immunity only applies where the defendants are able to establish that reasonable persons in their position would not have understood that their conduct was within the scope of the established prohibition. *In re State Police Litigation*, 88 F. 3d 111, 123 (2nd Cir. 1996). This analysis was articulated further in *Anderson v. Creighton*, 483 U. S. 635, 640., clearly established for qualified immunity purposes means that the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. His very action need not previously have been held unlawful, but in the light of pre-existing law its unlawfulness must be apparent. *Anderson*, supra, 483 U.S. at 639. The plaintiff submits that there was absolutely no probable cause to search Elizabeth Walczyk s home and that reasonable officers in the defendants position would have concluded the same. In fact, Defendant Brown himself admitted that had he known that Thomas Walczyk had not lived at Elizabeth Walczyk s home since 1992 he would have deemed this information relevant to the discussion of whether to seek a warrant and consequently presented it to the ruling

magistrate. (Exhibit M pp. 40-41.)

In the defendants motion for summary judgment they make several references to the fact that the warrant was signed by a neutral magistrate, and that there were no false statements in the warrant application as support for an objective finding of probable cause. However, the Supreme Court held in *Malley v. Briggs*, 475 U.S. 335, 345-346 (1986) that these facts are not conclusive to shield the preparing officers from liability:

> [W]hether a reasonably well-trained officer &would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. If such was the case, the officer's application for a warrant was not objectively reasonable, because it created the unnecessary danger of an unlawful arrest. It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment.

Some 25 years ago the United States Supreme Court further illustrated the unparalleled importance of presenting facts in a neutral fashion to a determining magistrate in *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978) in this case the court held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

The search itself, of Elizabeth Walczyk s home, violated her well-established federal and state constitutional rights to be free from search or seizure absent a finding of probable

cause upon truthful, objectively presented information.  The police defendants, in the instant case, can not insulate themselves from liability, through the doctrine of qualified immunity, as there is no question they were on notice of the plaintiffs clearly established constitutional rights under the rule of cases such as *Franks, Malley, Harlow, Payton* and countless others concerning the requirements for a showing of probable cause.  It is precisely the actions of the police defendants in the instant case that the aforementioned cases are attempting to prevent.  The only reference in the warrant to 27 Tunxis Street, the address of Elizabeth Walczyk, was that Thomas Walczyk had once lived there.   However, the warrant deliberately omitted the key fact that Thomas Walczyk had not lived at 27 Tunxis Street for at least seven years.  This information was readily and easily available to the police defendants.

As with any individual, Elizabeth Walczyk, indeed and her co-plaintiffs,   have a clearly established right  not to have their home invaded except upon an accurate finding of probable cause.  In *Payton v. New York, supra, 445 U.S. at 573 (1980)* the United States Supreme Court affirmed the overarching significance, under the fourth amendment, of the sanctity of the home thereby illustrating that the unreasonable actions of the Defendants violated Elizabeth Walczyk s clearly established right to privacy in her home.  The court in *Payton* states:

> The Fourth Amendment protects the individual's privacy in a variety of settings.  In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home - a zone that finds its roots in clear and specific constitutional terms:  "The right of the people to be secure in their . . . houses . . . shall not be violated."   That language unequivocally establishes the proposition that "[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable

9

governmental intrusion.  *Quoting Silverman v. United States,* 365 U. S. 505, 511. Clearly, in the instant case, the defendants had no probable cause to search the premises of Elizabeth Walczyk, at 27 Tunxis Street, in connection with the alleged actions of Thomas Walczyk.  As set forth in the plaintiffs motion for summary judgment, Thomas Walczyk had not lived with his parents since 1992, therefore there was no reason to believe that Thomas Walczyk had any firearms at the 27 Tunxis Street property.  In fact, there was nothing in the warrant application to support that Thomas Walczyk would or had committed any crime with the firearms located in Elizabeth Walczyk s home.

In order to demonstrate that Elizabeth Walczyk s right to be free from unlawful invasion in her own home was violated, she must show that the  officer submitting the probable cause affidavit  knowingly and intentionally, or with reckless disregard for the truth, . . . omitted material information, and that such .. . omitted information was  necessary to the finding of probable cause.    *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993), *citing Golino, supra,* 950 F.2d at 870; *Franks v. Delaware*, *supra*, 438 U.S. at 155-56.  An  officer may not omit circumstances that are critical to the evaluation of probable cause.  *Brown v. D Amico*, 35 F.3d 97, 99 (2d Cir. 1994).  Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, . . . the shield of qualified immunity is lost.  *Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994)*, quoting Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991), *cert. denied*, 112 S. Ct. 3032 (1992).

Based on the police reports, submitted by the defendants, addressing the alleged years of history between Thomas Walczyk and the police defendants at the very least, the

10

defendants had reason to know that Thomas Walczyk had not lived with Elizabeth Walczyk, at 27 Tunxis Street, in over seven years.  This is evident by the incident reports, prepared by the Farmington Police, exhibited by the defendants which have Thomas Walczyk's address as 28 Tunxis Street.  Thomas Walczyk is married with children of his own and consequently as most adult children do not live with his parents anymore.  Such a key omission of fact would materially mislead a magistrate in determining whether probable cause does, in fact, exist.  As the Court held in *Brown v. D Amico*, 35 F.3d 97, 99 (2d Cir. 1994),  it is unequivocally prohibited conduct for an officer to omit circumstances that are critical to the evaluation of probable cause.   In reviewing a warrant application under the qualified immunity defense,  a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the  corrected affidavit would have supported a finding of probable cause.  *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993), *citing Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992); *Magnotti v. Kuntz*, 918 F.2d 364, 368 (2d Cir. 1990).  Only if the corrected affidavit [does] not support an objective finding of probable cause would the factual disputes be material to resolving the issue of probable cause.  *Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir. 1992).  If probable cause remains, no constitutional violation of the plaintiff's Fourth Amendment rights has occurred.  *Soares v. State of Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993), *citing Cartier v. Lussier*, 955 F.2d, *supra*, at 845; *Magnotti v. Kuntz*, *supra*, 918 F.2d at 368.  However, if the corrected affidavit does not support an objective finding of probable cause, then the court should conclude that  the defendant is not entitled to the qualified immunity defense.  *Soares v. State of Connecticut, supra*  8 F.3d at 920-21, *citing Cartier*

*v. Lussier*, 955 F.2d, *supra*, at 845-46.

In *State v. Walczyk,* 76 Conn.App. 169 at 181 the Connecticut Appellate Court applied this sort of analysis and concluded the following:

> The warrant application] does not indicate which of the specifically described firearms would likely be found in the defendant's residence and which would likely be found in his father's residence. Indeed, it does not allege any criminal behavior at all on the part of the defendant's father. What remains are slim pickings. We can discern only two assertions of fact that might establish probable cause to search the defendant's residence for firearms on August 30, 1999. Neither singly nor jointly do these facts suffice.

Although not binding on this court, the Connecticut Appellate Court holding illustrates the slim pickings or lack of indicia of probable cause present in the corrected warrant. Indeed so little is present, that any reasonably well-trained officer in [the defendants] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. *Malley v. Briggs*, 475 U.S. 335, 344 (1986).

### C.   THE ACTIONS OF THE FARMINGTON POLICE WERE NOT OBJECTIVELY REASONABLE.

The defendants would also be entitled to qualified immunity from the plaintiffs claims only if reasonably competent police officers could have disagreed as to whether there was probable cause to arrest the plaintiff. *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997), *citing Golino v. City of New Haven*, *supra*, 950 F.2d at 870. Thus, qualified immunity must also be analyzed in the context of the defendants actions following the issuance of the search and arrest warrants. That context has been described as follows in *Zandhri v. Dortenzio*, 228 F. Supp. 2d 167, 173 (D. Conn. 2002), *quoting Malley v. Briggs*, 475 U.S. 335, 341, 345, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986):

> [P]olice officers may be entitled to qualified immunity for arrests following the issuance of warrants by a judge or magistrate. The . . . issue is whether a reasonably-trained officer in [the defendants ] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant. . . . [T]he officer will not be immune if, on an objective basis, it is obvious that no reasonably competent officer could have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

It is patently unreasonable to speculate about whether Thomas Walczyk stored weapons at his parents home, or that, because it was his parents house, that he had access to their weapons. In fact, as mentioned above, although it bears repeating, Defendant Brown himself admitted that the fact that Thomas Walczyk had once lived at 27 Tunxis Street would have been irrelevant had he known it was some seven years ago. None of the allegations contained in the warrant referenced guns at 27 Tunxis Street. The warrant presents *no* facts to support probable cause that Thomas Walczyk would commit a  bloodbath  using firearms found at 27 Tunxis Street. Further, upon entering 27 Tunxis Street, the officers were informed that none of the firearms located therein belonged to Thomas Walczyk. Rather than halting the search and undertaking further investigation (a simple records check or further questioning would likely have been sufficient to dispel any doubts), the defendants expressly chose to ignore the objective facts, and continued their unlawful search uninterrupted, intrusively videotaping Lucian and Elizabeth Walczyk as well as every room in their house, despite the fact that both Elizabeth and Lucian informed the officers that their firearms were all located in the attic.

The defendants molded the limited, and in some cases irrelevant facts available to them and conjured up something short of probable cause in order to arrest Thomas

Walczyk. Had an objective person prepared the warrants, however, that person would have quickly determined, as did the Connecticut appeals court in *State v. Walczyk* by dismissing all charges, that there was never any probable cause to arrest Thomas Walczyk or to search his home, and most certainly no cause to search the home of his parents. Despite ample authority demonstrating the violation of clearly established constitutional rights, the defendants continue to maintain that they are entitled to qualified immunity because they claim that the rights asserted were not clearly established, or in the alternative, that the actions of the Farmington Police were objectively reasonable. A plaintiff must only show that the right at issue was sufficiently clear [so] that a reasonable official would understand that what he [did] violates that right. *LaBounty, supra*, 137 F.3d at 74, *quoting Anderson, supra*, 483 U.S. at 640. Therefore, this court must find that no reasonable jury could fail to conclude that it was reasonable for defendants to believe that their conduct would have not have violated the plaintiff's rights before ruling in favor of qualified immunity. *LaBounty, supra (internal quotations omitted).*

As demonstrated above, and in the Plaintiffs Memorandum of Law in Support of Plaintiffs Motion for Summary Judgment, the plaintiff has a sufficiently articulated clearly established constitutional rights not to have their home invaded absent a proper finding of probable cause pursuant to the Fourth Amendment of the United States Constitution. The weight of the case law supports the conclusion that the defendants should have known that their conduct would violate the plaintiff's constitutional rights. It is also clear that a reasonable official should have known not to omit key facts in a warrant application, thereby misleading the authorizing magistrate, to issue a warrant ordering the illegal and

intrusive search of one's home. It is obvious that the defendants' actions were not those of reasonable officials. Therefore, their defense of qualified immunity fails.

**State Constitutional Claims**

The plaintiffs incorporate by reference the "State Constitutional Claims" section of their objection to summary judgment as to the claims of Thomas Walczyk with regard to Article First §§7 and 9. The plaintiffs further incorporate by reference the above section of this memo entitled "Second Amendment Claim" and adopt the same analysis with regard to Elizabeth's ownership of the unlawfully seized firearms to.

The Connecticut Supreme Court in Benjamin v. Bailey, 234 Conn. 455, 465-466 (Conn., 1995) has held that:

> Both the explicit textual limitations and our precedents persuade us that the [state] constitution protects each citizen's right to possess a weapon of reasonably sufficient firepower to be effective for self-defense. The constitution does not guarantee the right to possess any weapon of the individual's choosing for use in self-defense. We conclude, therefore, that as long as our citizens have available to them some types of weapons that are adequate reasonably to vindicate the right to bear arms in self-defense, the state may proscribe the possession of other weapons without infringing on article first, § 15.

In the instant case, as stated in the Second Amendment section above, all the firearms owned by Lucian Walczyk, and subsequently Elizabeth Walczyk, were lawfully possessed and in violation of no state or federal regulation. (Exhibit G; Exhibit A, pp. 32-33, 141-42.) Thus, the deprivation of such firearms that continued long after Lucian's death is a violation of the Connecticut Constitution in light of the courts holding in *Benjamin*.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment should be denied.

THE PLAINTIFFS,


By: _____
Jon L. Schoenhorn ct00119
Their Attorney
Jon L. Schoenhorn & Associates
97 Oak Street, Hartford, CT 06106
Tel (860) 278-3500


## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 24th day of March, 2004 to the following counsel of record:

Thomas R. Gerarde, Esq.
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114
Tel. (860) 249-1361


_____
Jon L. Schoenhorn