UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THOMAS WALCZYK, ELIZABETH WALCZYK, MAXIMINA WALCZYK, individually and as P.P.A. for MICHELLE WALCZYK, a minor child,<br><br>Plaintiffs<br><br>v.<br><br>JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN, WILLIAM TYLER, ANGELA DESCHENES AND SHAWN BROWN,<br><br>Defendants | CIVIL ACTION NO. 3:02CV1536(RNC)<br><br><br><br><br><br><br><br><br><br><br><br>MARCH 24, 2004 |

## PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF THOMAS WALCZYK

The defendants seek summary judgment on the plaintiffs' amended complaint by motion dated February 2, 2004. For numerous reasons, the defendants' motion is meritless and should be denied. The defendants also claim that they are exempt from liability because of the doctrine of qualified immunity. This claim is erroneous, as it based on numerous disputed (and therefore misleading) claims of fact. For these reasons, the defendants' motion for summary judgment must be denied. The plaintiffs incorporate by reference the objections to defendants motion for summary judgment as to the claims of Elizabeth, Michelle and Maximina Walczyk.

**Statement of Facts**

The plaintiffs incorporate by reference the summary of facts set forth in their

1

Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in their Local Rule 56a Statement dated February 2, 2004 to the extent that they are uncontested. On those factual issues claimed by the defendants, that are contested, the plaintiffs set forth their version of facts below.

The facts presented by the defendants in their motion are riddled with inaccuracies and, in some cases, are irrelevant for the purpose of summary judgment. The plaintiffs incorporate by reference their Motion to Strike dated February 20, 2004, and further incorporate by reference the Plaintiffs' Local Rule 56a2 Response Statement dated March 24, 2004. Nowhere do the defendants claim that these incident reports were in the defendants' possession at the time they prepared the warrant application or that the substance was disclosed to them, nor were any of these documents included in the warrant application. The plaintiffs can think of no legitimate reason to include these reports other then to illustrate the years of animus the Farmington Police had against Thomas Walczyk and to further illustrate the police defendants' reckless disregard for the truth in preparation of the warrant applications. Indeed, as plaintiff has claimed in his motion to strike, dated February 20, 2004, and *infra,* the mere possession of at least some of these documents violated state law because they dismissed and erased matters.

On page 7 of the defendants' motion they allege that Thomas Walczyk stored "automatic weapons in several locations easily accessible to minors." This statement is categorically. First, Thomas Walczyk possess no automatic weapons pursuant to Conn. Gen. Stat. §53-202a. Second, the defendants offer no facts in the light most favorable to

the nonmoving part with respect to the storage of firearms. For instance, Thomas Walczyk's daughter, Michelle Walczyk, was well trained in firearm safety and knew never to touch the firearms. (Plaintiffs' Exhibit X). Furthermore, the defendants allege facts surrounding the warrantless charges of reckless endangerment and risk of injury to a minor, however offer no support in their motion for the validity of such charges. Since the defendants did not offer any support about the validity of these charges, beyond that of the original threatening charge contained in the warrant, the court simply can not rule in there favor for purposes of summary judgment.

**1988 Incident**

Thomas Walczyk was falsely charged, by the Farmington Police, in connection with the 1988 incident involving workers of the Barberino Reality and Development Corporation. All the charges referenced in the defendants' motion were dropped and Thomas Walczyk pleaded no contest to creating a public disturbance, a minor infraction, in an attempt to bring a swift end to his dealings with the Farmington Police. In preparation of the arrest and search warrants, at issue in the present action, the police defendants did not reference any of the facts surrounding the disposition of the unjustified criminal charges in the 1998 incident. (Plaintiffs' Exhibit A, pp.40-3.)

**1990 Incident**

Pursuant to Conn. Gen. Stat. §54-142a(c) and Conn. Gen. Stat. § 54-142c it is illegal for the defendants --or their counsel-- to have obtained and reviewed these erased records, and thus, a violation of law to reference or attach the documents (Defendants'

3

Exhibit K) in support of their motion for summary judgment. Therefore, Exhibit K, and any reference to it, or the facts contained therein, can play no part in the summary judgment analysis. See plaintiffs' Motion to Strike, dated February 20, 2004.

**1992 Incident**

In 1992, Thomas Walczyk was charged with Breach of Peace, Unlawful Discharge of a Firearm, and Conspiracy to Commit Cruelty to Animals in connection with an incident but denies there was probable cause to do so. Consequently, Thomas Walczyk entered into a plea agreement with the State's Attorney and pleaded guilty to the Breach of Peace charge resulting in a nominal fine. (Defendants' Exhibit A, pp. 56.) The only thing these "facts" illustrate is the ongoing animus and ill will the police defendants had against Thomas Walczyk since the incident had nothing to do with the reason for the arrest and search in September, 1999. Once again, the police defendants did not reference any of the facts surrounding the disposition of these charges when presenting the warrant applications to the issuing magistrate.

**1996 Incident**

With respect to the 1996 incident involving Thomas Walczyk and his brother, the defendants had absolutely no probable cause to take action, since no charges were even filed. This alleged "fact" is irrelevant and can play no part in the summary judgment analysis. Furthermore, Thomas Walczyk denies even threatening his brother. The defendants did not reference the fact that no charges were brought stemming from this incident in the warrant applications. The only potential relevant fact with regard to this

incident is that the Farmington Police were aware that Thomas Walczyk's address was 28 Tunxis Street, as evidenced by the signed incident report. (Defendants' Exhibit M.)

**Standard of Review for Summary Judgment**

The plaintiffs incorporate by reference their standard for summary judgment on pages 6 through 8 of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment.

Motions for summary judgment must be denied if reasonable minds could differ as to the importance of the evidence, and if "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). In short, summary judgment is inappropriate when "a rational jury might well reach an opposite conclusion from that of the moving party." *Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988). The plaintiff is entitled to receive the benefit of any doubt when their assertions conflict with those of the defendant requesting summary judgment. *Bieluch v. Sullivan*, 999 F.2d 666, 670 (2d Cir. 1993). As the Second Circuit court noted in *Cowan v. Breen*, 352 F.3d 756, 762-763 (2d Cir.2003) when deciding a motion for summary judgment the court must consider only the undisputed facts.

> Although Breen purports to rely only on the undisputed evidence in demonstrating that there was no constitutional violation of Cooper's rights, his brief on appeal is replete with his own versions of the events. As already noted, to the extent Breen's version of the events is disputed by Cowan, Breen's version forms no proper basis for this [motion for summary judgment]. Instead, to review the district court's interlocutory ruling, where the versions of the facts differ, we must consider Cowan's version and make all permissible inferences in her favor. *(Internal citations and*

5

*quotation marks omitted.)*

The plaintiffs submit that the defendants here have, likewise, relied upon disputed statements of fact.

**Substantive Due Process Claim**

Plaintiff Thomas Walczyk is not alleging a Fourteenth Amendment substantive due process claim in this case.

**Procedural Due Process**

Plaintiff Thomas Walczyk is not alleging a Fourteenth Amendment procedural due process claim in this case.

**Equal Protection Claim**

Generally speaking, the Equal Protection Clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. As the Second Circuit has explained an Equal Protection violation based upon selective application of a facially lawful state regulation is properly found when: (1) the person, compared with others similarly situated, was selectively treated; and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. *See also Crowley v. Courville*, 76 F.3d 47, 52-53 (2d Cir. 1996); *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995); *LaTrieste Restaurant & Cabaret Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 [2d Cir. 1980], *cert. denied*, 450 U.S. 959 [1981]); *Equus*

*Associates, Ltd. v. Town of Southampton*, 37 F. Supp. 2d 582, 598 (E.D.N.Y. 1999).

The Equal Protection Clause prohibits the government from "denying to *any person* . . . the equal protection of the laws." U.S. Const. amend. XIV (emphasis added). Contrary to the defendants' assertion, in their motion, the idea that the Equal Protection Clause prohibits government officials from treating citizens differently without regard to whether the victim is a member of an objectively definable class did not originate with the holding in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). This concept was established long before the facts of this case took place. For instance, in *Snowden v. Hughes*, 321 U.S. 1 (1944), the Court recognized that an individual could claim that a public official had violated the Equal Protection Clause by purposely singling him out. Shortly thereafter the Second Circuit in *Burt v. City of New York*, 156 F.2d 791 (1946), upheld an equal protection claim alleging that an individual had been treated differently by public officials because they "disliked him."

In addition, the Supreme Court has long recognized that individual taxpayers have claims under the Equal Protection Clause when they are intentionally singled out to pay higher taxes. *See, e.g., Allegheny Pittsburgh Coal v. Webster County*, W. Va., 488 U.S. 336 (1989); *Sioux City Bridge Co. v. Dakota County*, Neb., 260 U.S. 441 (1923). The Court has recognized explicitly that a "class of one" deserves constitutional scrutiny. *See Nixon v. Administrator of General Serv.*, 433 U.S. 425 (1977). In *Nixon*, the Court held that legislation directed at President Nixon was not an unconstitutional Bill of Attainder even though it disfavored him as an individual, because he "constituted a legitimate class of

one." *Id.* at 472.

As Judge Posner proclaimed in *Indiana State Teachers Ass'n v. Board of School Comm'n of Indianapolis*, 101 F.3d 1179, 1181 (7th Cir. 1996), discrediting the argument that the Equal Protection Clause only protects large, objectively definable classes; a class "can consist of a single member, or of one member at present; and it can be defined by reference to the discrimination itself. To make 'classification' an element of a denial of equal protection would, therefore, be vacuous."

Because Thomas Walczyk owned lawfully registered firearms he was treated differently at the hands of a governmental actor for reasons patently offensive to traditional notions of fairness and justice. The Equal Protection Clause exists to protect citizens from precisely such improperly motivated governmental action as that of the police defendants in the instant case. Differential treatment in government action motivated by the desire to punish one based on personal animus should not be tolerated any more than race or sex-based discrimination when it comes to the Equal Protection Clause. The discrimination against Thomas Walczyk is further evidenced by the years of incidents with the Farmington Police resulting in trumped up charges, as set forth above, in which the charges were consistently dropped or reduced to minor offenses. The police have a dislike for private citizens who have lawful collections of guns, as evidenced by the arrest warrant which devotes considerable space discussing Thomas Walczyk's firearm collection. The warrant to seize firearms was merely a pretext in order to deprive Thomas Walczyk of his lawful firearms. Moreover, the considerable discrimination by the police defendants is further

supported by the absolutely groundless seizure of Lucian Walczyk's, now Elizabeth Walczyk's, law gun collection.

Officer David Hebert of the Farmington Police Department was the officer dispatched to Thomas Walczyk's house to investigate the incident that lead to the present action and subsequently concluded that no crime had been committed. (Exhibit A, pp. 73, 76). However, without ever speaking to Officer Hebert, the defendants decided to go after Thomas Walczyk with a SWAT team, and concoct evidence of a phony "crime" and they prepared applications for arrest and search warrants based on their specious argument. (Exhibit D, pp. 29-30). It is patently unreasonable to issue a search warrant for "firearms" or to seek an arrest warrant for Thomas Walczyk for "threatening" simply because he lawfully owns firearms. The utter absurdity of the defendants' behavior is made clear by the fact that no similarly situated individual would have been treated the same way by a reasonable police officer. In the instant case, the actions of the police defendants violated the plaintiff's right to equal protection under the law.

In *LeClair v. Saunders, supra*, a group of dairy farmers claimed that they were subjected to unequal treatment, in violation of the fourteenth amendment. The farmers fell into no suspect class or even into any classification whatsoever--they simply alleged that they were the victims of selective enforcement. The Second Circuit stated the applicable rule of law:

> [L]iability in the instant type of equal protection case should depend on proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations

such as race, religion, intent to inhibit or punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person.* (Emphasis added.)

*Id.* at 609-10; see also, *FSK Drug Corp. v. Perales,* 960 F.2d 6, 10 (2d Cir.1992)(reaffirming rule set out in *LeClair* ); *Falls v. Dyer,* 875 F.2d 146, 149 (7th Cir.1989) (town could not, consistent with equal protection clause, maliciously single out storeowner for enforcement of law against display of portable signs). "If [the public official] went after [the plaintiff] to *get him,* for any reason, then he should be liable." (Emphasis in original.) *LeClair v. Saunders,* supra, 627 F.2d at 611.

Thomas Walczyk asserts that both the nature of the action against him, as well as the manner in which it was carried out, sufficiently demonstrates that the defendants acted either with malice or a bad faith intent to injure him and his family. In other words, there is evidence to demonstrate that these defendants went after Walczyk just to "get him." The plaintiffs submit, in any event, that the evidence on this point is sufficiently in dispute to make it a jury question. *See, e.g. Schnabel v. Tyler,* 230 Conn. 735, 646 A.2d 152 (1994) (repeatedly writing up officer for minor infractions, taking away his gun and badge while guarding a violent prisoner, and making him sit on an uncomfortable stool while performing menial tasks was sufficient to demonstrate equal protection violation).

**Second Amendment**

The defendants maintain in their motion for summary judgment that "the Second Amendment establishes no right to possess a firearm apart from the role possession of the gun might play in maintaining a state militia (p.22)." However, over the past couple years

the government has come to realize that the Second Amendment establishes that the federal constitutional right broadly incorporates the individual right to possess guns for self-defense outside membership in any militia or military service. See *United States v. Emerson*, 270 F. 3d 203 (5th Cir. 2001), *cert. denied* 119 S. Ct. 220(2002). The U.S. Justice Department has adopted this view in filings to the United States Supreme Court. *See,* "Brief for the United States in Opposition to Petition for Writ of Certiorari" in *Emerson v. United States*, Docket No. 01-8780 (May 2002) and in *Haney v. United States*, Docket No. 018782 (May 2002). Both filings reference a "Memorandum From the Attorney General to All United States Attorneys, Re: *United States v. Emerson*, Nov. 9, 2001" that sets forth the government's broad interpretation of the Second Amendment which includes a right to bear arms by those other then the militia.

At Thomas Walczyk's home, the police seized handguns and rifles, some rare collector's items, that were all lawfully registered and not in violation of any laws. (Exhibit G; Exhibit A, pp. 32-33, 141-42; Exhibit T). Moreover, there was nothing whatsoever to connect these lawful firearms with the plaintiff's statements to Officer Herbert. Unlike the majority of cases cited by the defendants that involve illegal weapons, the plaintiff's firearms were all registered and legally in his possession. This was all pursuant to the invalid warrant, thus the unlawful deprivation of Thomas Walczyk's lawfully registered firearms violated his Second Amendment right to bear arms.

**Eight Amendment Claim**

In their motion, the defendants claim that Thomas Walczyk's Eighth Amendment

11

Claim is barred through application of absolute judicial immunity. In support of this proposition defendants cite the case of Sanchez v. Doyle, 254 F. Supp. 2d, 266 (D. Conn. 2003). However, in their argument the defendants, as did the court in Sanchez, fail to account for the significant distinction between the roles performed by the judiciary and the police in setting bail. Public policy dictates that police should not be entitled to judicial immunity for their actions, particularly since they are already shielded from liability within the scope of their job through the doctrine of qualified immunity.

The plaintiffs incorporate by reference the section entitled "Thomas Walczyk's Bail was Excessive and Designed to Keep Him Locked Up During the Search of His Home" on pages 21 through 23 of their memorandum of law in support of their motion for summary judgment to the extent that the facts are undisputed.

"Absolute immunity is of a rare and exceptional character," Barrett v. United States, 798 F.2d 565, 571 (2d Cir. 1986). It involves a history inquiry: "some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993), quoting Butz v. Economou, 438 U.S. 478, 508 (1978). In determining whether a public official is entitled to absolute immunity, courts employ a "functional approach." See, e.g., Burns v. Reed, 500 U.S. 478, 486 (1991) (examining the nature of the function performed by a prosecutor; not the identity of the actor who performed it); Forrester v. White, 484 U.S. 219, 229 (1988) (same).

However, an official who seeks to invoke the doctrine of absolute immunity bears the burden of showing that it is warranted for the function in question, as opposed to the presumption that qualified immunity affords sufficient protection. *See, Burns, supra*, 500 U.S. at 486-87; *Butz, supra*, 438 U.S. at 506; *Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996). This showing, in turn, requires the official to convince the court that there is historical or common-law support for cloaking the challenged actions with absolute immunity. *Id.* at 492-93. In the absence of such a showing, the court must generally reject the notion of absolute immunity, since § 1983 "on its face does not provide for *any* immunities, we would be going far to read into it an absolute immunity for conduct which was only accorded qualified immunity in 1871," when the statute was enacted. *Malley v. Briggs*, 475 U.S. 335, 342 (1986) (emphasis in original).

Only if historical or common-law support exists, will courts go on to consider whether absolute immunity in the current context is warranted by public-policy factors, and, particularly, the risks to the performance of important governmental functions posed in its absence by vexatious litigation. *See, Burns, supra*, 500 U.S. at 494. The defendants have utterly failed to offer any such analysis, and have not met their burden of showing why police officers should be immune from setting deliberately high bonds, for reasons of animosity, whim, or investigative strategy, that have nothing to do with the purpose of bond: to ensure an arrested person's presence in court. The fact that Connecticut law gives unfettered discretion to police to set bond, with no oversight until a bail commissioner

13

is contacted many hours later, presents sufficient dangers of constitutional abuse, to deny absolute immunity in these circumstances.

### The Doctrine of Qualified Immunity Cannot Be Established

According to *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 250 (2d Cir. 2001) "to establish a qualified immunity defense in a §1983 claim, a defendant must show that his actions did not violate clearly established law or it was objectively reasonable for the defendants to believe that his actions did not violate any such law."

The defendants argue that they are entitled to qualified immunity because the constitutional rights of the plaintiffs were not clearly established, or in the alternative the actions of the police defendants were objectively reasonable. The defendants make no claim outside the qualified immunity context that either warrant was supported by probable cause. Indeed, they would be hard pressed to make that claim in light of the strong language in the Appellate Court decision in *State v. Walczyk*. However, they do claim that they are entitled to qualified immunity. This argument fails because under the applicable standard of review, this court must take the facts alleged in the light most favorable to the plaintiffs. In this case, those facts preclude any finding in the defendants' favor. Indeed, the plaintiffs' submit, as they have in their cross motion for summary judgment, that the actions of the defendants were objectively *unreasonable*.

The applicability of the qualified immunity doctrine is limited: "[g]overnment officials performing discretionary functions are entitled to qualified immunity unless they violate clearly established constitutional rights of which a reasonable person would have known."