### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

THOMAS WALCZYK, ET AL      :      NO.: 3:02CV1537 (RNC)
                                  :
v.                              :
                                  :
JAMES RIO, ET AL             :      March 24, 2004

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to D.Conn.L.R. 7 and 56 and Fed.R.Civ.P. 56, the defendants submit the following Memorandum of Law in Opposition to the plaintiffs' Motion for Summary Judgment dated February 2, 2004. The defendants incorporate by reference the Local Rule 56(a)2 Statement dated March 24, 2004 as well as their Rule 56(a)1 Statement dated February 2, 2004.

As a threshold matter, it is important to understand what the plaintiffs have not addressed in their Motion. They have not moved for summary judgment on the Fourteenth Amendment due process claims, procedural or substantive, the Second Amendment claims, the state constitutional claims, or the supervisory liability claim against Rio. The plaintiffs also withdrew their First Amendment claims. Instead, they focus on Fourth Amendment claims.

## I.    STATEMENT OF FACTS.

The operative facts that give rise to the plaintiff's complaint are best understood in the context of the history surrounding Thomas Walczyk and Tunxis Street, Farmington. This lawsuit has four plaintiffs, Thomas Walczyk, his wife, Maximina Walczyk, his daughter, Michelle Walczyk, and his mother, Elizabeth Walczyk. Thomas, Maximina and Michelle reside at 28 Tunxis Street. Elizabeth resides diagonally across the street at 27 Tunxis Street.

The defendants have submitted separate Motions for Summary Judgment as to the claims of Elizabeth, Michelle and Maximina Walczyk. All of the Motions refer to the single Local Rule 56 Statement which is incorporated herein by reference. .

### A.    LAND USE LAWSUITS

Sometime in the middle 1980s, Elizabeth and her now deceased husband, Lucien, brought a lawsuit against the owner of adjoining property to establish their agricultural rights to neighboring land. Eventually, they were successful. They also joined a lawsuit to prevent development in their neighborhood.

The homes of 27 and 28 Tunxis Street are on what appear to be a secluded cul-de-sac off of Route 6 in Farmington. At the time of this case, this section of Route 6 had not seen much commercial development. The land behind the homes that made up the odd numbered side of Tunxis Street appears to have been farmland for many years. Other parts of that land were State forest. In the late 1980s, some section of that land near Route 6 was sold for development purposes as well as the land at the end of Tunxis Street. The land at the end was to be developed as a private road with new homes. Needless to say, none of the Walczyks were interested in development.

Sometime in the late 1980s or early 1990s, Lucian and Elizabeth Walczyk, owners of 27 Tunxis Street, participated in a lawsuit to block the development. They had used nearby land for flower gardening and farming and it was disturbed in the development process. They sued and established rights, but not ownership, to certain parts of the land.

Thomas Walczyk, perhaps emboldened by his parents' success, brought a lawsuit claiming that an adjoining parcel to his property was his by adverse possession. The defendant in that lawsuit, Barberino Realty, will feature prominently later in this motion. Despite his best efforts, Thomas' lawsuit was rejected and his appeals were unsuccessful. During this time, Thomas was openly hostile to Barberino Realty and its agents.

As to the land that was later developed as a private road, Thomas filed a lawsuit claiming he had title to the land by virtue of adverse possession. He filed suit in 1995 and not only lost on his principal claim, <u>Walczyk v. Barberino Realty & Development Corporation</u>, 1996 Ct. Sup. 990, 16 CLR 34, J.D. of Hartford/New Britain at New Britain, (Jan. 10, 1996, *Arena, J.*) (Exhibit R1) but Barberino Realty counterclaimed to quiet title

and judgment was entered in favor of Barberino, <u>Walczyk v. Barberino Realty & Development Corporation,</u> 1997 Ct. Sup. 3126, J.D. of Hartford/New Britain at New Britain, (May 14, 1997, *Keller, J.*), Exhibit R2. By 1998 had lost all appeals.  <u>Walczyk v. Barberino Realty & Development Corporation</u>, 48 Conn. App. 911, 719 A.2d 1233 (1998), Exhibit R3. The Connecticut Supreme Court refused to grant Walczyk's petition for certiorari. <u>Walczyk v. Barberino Realty & Development Corporation</u>, 245 Conn. 904, 719 A.2d 1165, *cert. denied* (1998), Exhibit R4. More than a year after he had lost his last appeal, Thomas went to see Captain Rio in April or May 1999. Relevant to this portion of the discussion, however, is Thomas's comment to Rio that "he was taking steps to have the judge's decision thrown out." However, no appeals remained. Walczyk told Captain Rio that he would take matters into his own hands, if necessary. Captain Rio advised the defendant that, if he believed that someone was trespassing on his property, he should not take the matter into his own hands, but instead should call the police to take care of the problem.

Instead, Thomas, relying on some "common law" notion, concluded that despite his loss in court, he would only need to prevent the lawful owner, Barberino Realty, from entering the property for a year and then Barberino Realty would need to go back to court. Thomas believes that Conn. Gen. Stat. §52-575 provides this authority. While there is some language in section 52-575 that references entry to land and one year, there is nothing in section 52-575 that would allow any court to draw the same conclusion as Thomas has from the statute. It is Thomas's common law interpretation that leads him to place a gate across the access to the land in question despite the clear and unambiguous text of the Superior Court decision. It is Barberino Realty's construction agents who knock down the gate with a bulldozer on August 30, 1999 and leave a log splitter on the land that causes Thomas to call the Farmington Police. The remaining activity after August 30, 1999 will be detailed below.

### B.    PRIOR BRUSHES WITH THE LAW

Thomas Walczyk is no stranger to the law. In fact, he has had many brushes with the law, all or nearly all marked by threats of violence and/or the display of weaponry.

1.    **1988 Incident.**

In 1988, Thomas was arrested on the charges of Threatening, Reckless Endangerment in the First Degree, and Interfering with a Police Officer after he confronted surveyors and other workers from Barberino Realty. Thomas approached the men with a loaded AR-15 (civilian model M-16). The weapon had thirty (30) rounds in the clip and one round was locked and loaded in the chamber, ready to fire. After the Farmington Police arrived, Thomas initially refused the officers' lawful commands to drop the weapon. Despite having two officers pointing their service weapons at him, Thomas refused to drop his weapon and continued to yell about trespassing and some state statute. Even after lowering his weapon, Thomas was uncooperative during the protective frisking phase and had to be physically restrained and handcuffed. *See* Exhibit J. As to the 1988 incident, Thomas Walczyk was originally charged with violations of Conn. Gen. Stat. §53a-22, Threatening, Conn. Gen. Stat. §53a-63, Reckless Endangerment in the First Degree by substitute information, and Conn. Gen. Stat. §53a-167a, Interfering with a Police Officer by substitute information. In this incident, Walczyk plead guilty to a violation of Conn. Gen. Stat. §53-181, Creating a Public Disturbance.

2.    **1990 Incident.**

In 1990, a Farmington resident followed Thomas in his motor vehicle back to his residence at 27 Tunxis Street after Thomas cut the resident off while driving. Seeing the person following him, Thomas went inside his residence and returned with a loaded AK-47 (Soviet model assault rifle). *See* Exhibit K. Thomas was charged with Threatening. As to the 1990 incident, Thomas Walczyk was originally charged with a violation of Conn. Gen. Stat. §53a-22, Threatening. The State's Attorney later entered a disposition of *nolle prosequi* as to this charge.

3.    **1992 Incident.**

In 1992, Thomas was charged with Breach of Peace, Unlawful Discharge of a Firearm, and Conspiracy to Commit Cruelty to Animals after a neighbor saw Thomas shoot his cat. Upon investigation, officers found two dead cats. Thomas told officers that

he "has been shooting cats in his backyard for years." As to the 1992 incident, Walczyk was originally charged with violations of Conn. Gen. Stat. §53a-247, Cruelty to Animals, Conn. Gen. Stat. §53a-203, Unlawful Discharge of a Firearm by substitute information, and Conn. Gen. Stat. §53a-48, conspiracy to Commit cruelty to animals by substitute information. In this incident, Walczyk plead guilty to a violation of Conn. Gen. Stat. §53a-181, Breach of Peace.

### 4.    1996 Incident.

In 1996, Thomas was almost charged after an altercation with his brother, John. Thomas and John had an argument over Thomas' land dispute with Barberino Realty. John complained that Thomas pushed him twice during the argument. John called police and made a report even though he did not feel in fear of imminent physical injury. John was concerned because his brother Thomas owns several guns and could act on the threat. As to the 1996 incident, no charges were brought against Walczyk.

### C.    EVENTS OF AUGUST 30, 1999 THROUGH SEPTEMBER 7, 1999

The involvement of the Farmington Police Department and ultimate search and seizure at the Walczyks' residences stems from a longstanding dispute between Thomas Walczyk and real estate developer, Barberino Realty Corporation.  Barberino Realty Corporation had sought to develop a portion of land it owned adjacent to Thomas Walczyk in the late 1980s.  Walczyk, however, maintained that he owned the property by adverse possession.  After several years of litigation, the Superior Court issued a decision stating that Barberino owned the entirety of the property and Walczyk had no right, title, or interest.  Walczyk refused to accept this result, which he attributes to a "crooked judge."[1]

On August 30, 1999, Thomas Walczyk  observed that a locked gate on property that he claimed to own (but knew he did not by virtue of a court decision more than 18

---

[1]*See* Walczyk v. Barberino Realty & Development Corporation, 1996 Ct. Sup. 990, 16 CLR 34, J.D. of Hartford/New Britain at New Britain, (Jan. 10, 1996, Arena, J.); Walczyk v. Barberino Realty & Development Corporation, 1997 Ct. Sup. 3126, J.D. of Hartford/New Britain at New Britain, (May 14, 1997, Keller, J.). Walczyk v. Barberino Realty & Development Corporation, 48 Conn. App. 911, 719 A.2d 1233, *affirm'd*, 245 Conn. 904, 719 A.2d 1165, *cert. denied*, (1998).

months earlier) had been knocked down and that a logging skidder had been parked on property that he thought belonged to him. He called the police to report this alleged trespass. In response, Officer David Hebert of the Farmington police department came to Walczyk's house. Hebert advised him to file a civil action to establish his property rights but indicated that he would take no further action until Walczyk could produce authoritative evidence of ownership. The defendant then told Officer Hebert that "the police weren't taking the necessary action to avoid a bloodbath." Before he left, Hebert warned the defendant that he would be arrested if he interfered with the work that was being done by the adjoining landowner.

Upon returning to the police station, Officer Herbert wrote a report concerning the incident. Upon review of Officer Hebert's report, Hebert's supervisors, including Captain Rio, Sergeant Tyler and Corporal Deschenes, all knowledgeable of Walczyk's prior brushes with the law, determined that they should seek an arrest warrant and a search warrant for firearms. On September 4, 1999, the police obtained both an arrest warrant for the defendant and a search warrant for his residence and that of his parents across the street. Both warrants were executed on September 7, 1999. Without informing the defendant of the arrest warrant, the police asked him to come to the police station to discuss the property dispute. He was then arrested and incarcerated. He was not told that the police were in the process of searching the family homes. While Thomas was in custody, the officers' conducted a search of the properties. They searched 27 Tunxis Street first and then moved to 28 Tunxis Street second.

Once Walczyk had left his residence, several police officers searched the two residences. In addition to seizing the six firearms specifically identified in the search warrant, the officers saw and seized a large number of firearms, piles of ammunition and related paraphernalia. In the view of the police, several of the firearms were loaded. The officers knew that some of Walczyk firearms were registered and licensed to him because that information, contained in records at the police station, was the source of their identification of the weapons for which they would search.

The Farmington police, together with assistance from some members of the

West Hartford police department, executed the search warrants on September 4, 1999. Although the assisting members from West Hartford were part of the emergency response team, none of them was dressed in SWAT uniforms nor were any special weapons or tactics employed.

The officers recovered nearly 70 weapons from Thomas Walczyk's home and an additional 19 from Lucian Walczyk's home. The search proceeded without incident. The officers guaranteed that Thomas Walczyk would not barricade himself in his home by implementing a ruse to draw him out. Sergeant Jepsen called Thomas Walczyk and asked him to come to the Farmington police department to discuss the land dispute with Barberino Realty prior to the search warrants being executed. Walczyk was then arrested pursuant to the warrant for threatening, and the search team was given the green light to proceed. During the search of Thomas Walczyk's home, loaded automatic weapons were found in several locations easily accessible to minors such as (1) in the kitchen behind boxes of cereal; and (2) in the family room areas. Accordingly, Walczyk was also arrested on the additional charges of reckless endangerment, risk of injury to a minor and improper storage of a firearm. While on scene, the Farmington officers also seized thousands of rounds of ammunition from the home. Although the search warrant did not specifically authorize seizure of ammunition, the officers contacted a prosecutor during the search and the prosecutor advised them to seize the ammunition as well, given that it is an inherently dangerous commodity.

Walczyk was tried based on the State's ten count information against him. The State charged the defendant with risk of injury to a child under Conn. Gen. Stat. §53-21. The trial court acquitted him of that charge. The State also charged him with threatening under §53a-62. The jury acquitted him of that charge. Further, the state charged him with disorderly conduct under General Statutes § 53a-182 (a)(2) and reckless endangerment under General Statutes § 53a-64. The jury found him guilty of those charges. The court also found Walczyk guilty of two out of six counts of violating the improper firearm storage statute.

Walczyk appealed his state court convictions and the convictions were

overturned on appeal. The court concluded that probable cause lacked to issue the search warrant to obtain evidence of threatening. State v. Walczyk, 76 Conn. App. 169, 818 A.2d 868 (2003).

### D.    PRESENT ACTION

As plaintiff, Thomas Walczyk, with his co-plaintiffs, Elizabeth Walczyk, Maximina Walczyk and Michelle Walczyk, has brought a two count complaint claiming his federal and state constitutional rights were violated.

The plaintiffs have identified the following Farmington police offices as defendants: Captain James V. Rio, Detective Brian Killiany, Sergeant James Jepsen, Sergeant William Tyler Corporal Angela Deschenes, and Officer Shawn Brown. The officers are sued in their individual capacities only. There is no claim based on Monell v. Dept. of Soc. Servs., 436 US 658 (1978), but the plaintiffs seek to impose supervisory liability upon Captain Rio. Without much specification, the plaintiffs claim that all of the defendants violated their First, Second, Fourth, Eighth and Fourteenth Amendment Rights. Plaintiff's counsel has agreed to withdraw the First Amendment claims on behalf of all plaintiffs.

## II.    LAW AND ARGUMENT.

### A.    THOMAS WALCZYK IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS ILLEGAL SEARCH AND SEIZURE AND UNLAWFUL ARREST CLAIMS.

Surprisingly, the plaintiffs' memorandum of law in support of their motion ignores the existence of the doctrine of qualified immunity. While other plaintiffs have claimed that specific conduct might unwrap the presumptive mantle of immunity, the plaintiffs' effort not to mention or address the existence of the doctrine is not enough to wish it into inapplicability. The defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997), *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is more than just a defense; the doctrine of qualified immunity is

***an immunity from suit***. <u>Locurto v. Safir</u>, 264 F.3d at 163. (emphasis added.) The plaintiffs' willful blindness to qualified immunity is fatal to their claims at summary judgment as the existence of the immunity informs and defines the standards by which the officer's conduct is measured and ignorance of the same compels denial of the plaintiffs' Motion for Summary Judgment.  We need not repeat the law governing the doctrine of qualified immunity as it is set forth in the defendants' memorandum of law, Section II.B., is incorporated by reference. The most significant flaw is the plaintiff's misconception that the absence of probable cause is sufficient, as a matter of law, for him to be granted summary judgment.  Because the defendants needed only arguable probable cause to support the arrest and search warrants under the doctrine of qualified immunity, the plaintiff's motion must be denied**.**

Walczyk obliquely claims that the fact the warrants were signed by Judge Norko during his mother's wake is indicative of the defendants' recklessness. Pl. Mem. at 9. In <u>U.S. v. Leon</u>, the court stated:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

<u>Leon</u>, 468 U.S. at 920-21.

The facts in <u>Greenstreet v. County of San Bernardino</u>, 41 F.3d 1306 (1994) bear no resemblance to those presented by Walczyk. Plaintiff's oblique claim that Cpl. Deshanes and Officer Brown had the warrant signed after business hours is nothing like the the 11:00 pm execution of the warrant by the magistrate in <u>Greenstreet</u>. There, the claimed violation was certainly egregious. In <u>Greenstreet</u>, the officers tailed a suspect, Richard Allen Greenstreet, a distant cousin of the plaintiffs, and concluded without any investigation whether Richard lived at that location. The officers in <u>Greenstreet</u> assumed without investigation that Richard lived there and executed a search warrant at the premises. The court's determination that the warrant was not supported by probable

cause had nothing to do with the late hour that the warrant was signed and was mentioned in *dicta* by the court.

The bulk of the plaintiff's misguided and inapplicable Fourth Amendment analysis covers pages 9 through 18 of their brief. The arguments ignore the proper standard – Fourth Amendment, not the Connecticut Constitution. The arguments ignore qualified immunity and that standard – arguable probable cause and the presumption that the warrants were signed by a magistrate. Essentially, these arguments are a rehash of his arguments to the Connecticut Appellate Court but have little application to his claims under 42 U.S.C. §1983 and fail to take into consideration that the warrants need only arguable probable cause to cloak the officers with qualified immunity and thus defeat the plaintiff's motion for summary judgment.

From page 9 to page 13, Walczyk essentially claims no crime was committed and therefore the officer could never have had probable cause. Despite examining the elements of threatening, Walczyk fails to view the facts viewed in favor of the defendants. Walczyk ignores the fact that Officer Hebert was not required to arrest him on the scene. Walczyk ignores his own past conduct and his argument reduces to little more than a claim that the officers prepared the warrants negligently.  Inadvertent and negligent conduct which causes injury, does not support an action pursuant to 42 U.S.C. § 1983. *See* Daniels v. Williams, 474 U.S. 327, 336 (1986).

It bears repeating that plaintniff's entire analysis from pages 9-20 ignores that the defense of qualified immunity shields government agents "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997), *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It is more than just a defense; the doctrine of qualified immunity is ***an immunity from suit***. Locurto v. Safir, 264 F.3d at 163. (emphasis added.)

At pages 15-18, the plaintiff claims the defendants exceed the scope of the authority of the warrant when the defendants seized items not listed in the warrant. Despite the plaintiff's protestation to the contrary, seizing additional items not described

in the search warrant was not violative of the fourth amendment. "The reasonableness requirement of the Fourth Amendment applies not only to prevent searches and seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of searches and seizures that are carried out, whether pursuant to a warrant or under `exigent circumstances.'" <u>Ayeni v. Mottola</u>, 35 F.3d 680, 684 (2d Cir. 1994) (<i>citing</i> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989) and <u>Tennessee v. Garner</u>, 471 U.S. 1, 7-8 (1985)). "Law enforcement officers conducting searches under a warrant are limited in their conduct to either (a) actions expressly authorized by the warrant, or (b) such further actions as are impliedly authorized because they are reasonably related to accomplishing the search authorized by the warrant or accomplishing additional legitimate law enforcement objectives, such as insuring the safety of the searching officers and effectively responding as law enforcement officers to circumstances that might arise during the course of the search." <u>Id</u>. at 685 (footnotes omitted). The plain view doctrine provides that "the police may seize evidence in plain view without a warrant in certain limited cases.  The Supreme Court has set forth three conditions that must be met before the plain view doctrine may be applied.  First, the initial police intrusion must be lawful, such as where the police have a warrant to search a given area for specified objects, and in the course of the search discover other incriminating articles[;] . . . Second, the discovery of evidence in plain view must be inadvertent[;] [unless the objects seized are contraband, stolen or dangerous in themselves.  <i>See</i> <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 471 (1971)] . . . [;] Third, it must be 'immediately apparent to the police that they have evidence before them' . . . ."  (Citations omitted.)  <u>United States v. Bonfiglio</u>, 713 F.2d 932 (2nd Cir. 1983).

Here, all three conditions were present. The officers were present under the auspicious of a lawful search warrant. The items found that were not described in the warrant – magazines, ammunition and the like, were found inadvertently during the course of the search in plain view and some of these items were dangerous in themselves (ammunition). Not only did the officers telephone State's Attorney Brodsky to inquire whether they should take the items not specifically described in the warrant,

Captain Rio spoke with State's Attorney John O'Reilly regarding his opinion of probable cause for the arrest and search warrants and Attorney O'Reilly agreed that probable cause existed to obtain arrest and search warrants based on the events contained in Officer Hebert's report. Def. L.R. 56 Stmt., ¶21.

"[A]s a practical matter, police officers must be able to rely on the advice of prosecutors. The judicial system depends upon this reliance." Dale v. Kelley, 908 F. Supp. 125, 138 (W.D.N.Y 1995) (concluding that village police chief's reliance on district attorney's "relatively more expert opinion that probable cause existed was objectively reasonable as a matter of law"); see also Williams v. Fedor, 69 F. Supp.2d 649, 677-78 (M.D.Pa. 1999) (under objective-reasonableness standard, officers could rely upon district attorney's advice and believe that they were not violating plaintiff's rights by proceeding with perjury prosecution); East Coast Novelty Co. v. City of New York, 781 F. Supp. 999, 1011 (S.D.N.Y. 1992) (because she was entitled to rely on advice of counsel in drafting and executing warrant and she did not exceed that advice, officer was entitled to qualified immunity).

Not surprisingly, the plaintiff pays scant attention, indeed only pages 18-21, on the corrected affidavit test, in favor of his more expansive arguments on the Fourth Amendment.  Again the plaintiff improperly relies on Connecticut authority to define the scope of the Fourth Amendment by the standard in the Connecticut Constitution. Moreover, the plaintiff points to no false statements, only omissions, and those omissions when corrected, do not change the finding that arguable probable cause existed.

The sum and substance of the plaintiff's argument is on page 20 of his brief. Walczyk points to three items, none of which are fatal to the warrants. While Thomas Walczyk had not lived at 27 Tunxis for seven years, he had used both addresses over the time the officers had prior deals with him. Additionally, the proximity of the firearms – across the street, the tense, evolving situation with conflict with Barbarino Realty lead the officers to conclude that searching at 27 Tunxis Street was proper.

Walczyk also claims that the officers failed to investigate dispositions or outcomes of the prior history items listed in the warrants. Under the corrected affidavit test, such information comes in for consideration and these convictions and pleas are relevant.

In 1988, Thomas was arrested on the charges of Threatening, Reckless Endangerment in the First Degree, and Interfering with a Police Officer after he confronted surveyors and other workers from Barberino Realty. Thomas approached the men with a loaded AR-15 (civilian model M-16). The weapon had thirty (30) rounds in the clip and one round was locked and loaded, ready to fire. After the Farmington Police arrived, Thomas initially refused the officers' lawful commands to drop the weapon. Despite having two officers pointing their service weapons at him, Thomas refused to drop his weapon and continued to yell about trespassing and some state statute. Even after lowering his weapon, Thomas was uncooperative during the protective frisking phase and had to be physically restrained and handcuffed. At the time of this incident, Thomas lived at 27 Tunxis Street. Exhibit J; Exhibit A, Dep. Thomas Walczyk, p. 40-3. As to incident number 88-4505 (attached to Defendants Local Rule 56(c)(1) Statement as Exhibit J), Thomas Walczyk was originally charged with violations of Conn. Gen. Stat. §53a-22, Threatening, Conn. Gen. Stat. §53a-63, Reckless Endangerment in the First Degree by substitute information, and Conn. Gen. Stat. §53a-167a, Interfering with a Police Officer by substitute information. In this incident, Walczyk plead guilty to a violation of Conn. Gen. Stat. §53-181, Creating a Public Disturbance. Exhibit Q, Aff. Rio, 21; Exhibit A, Dep. Thomas Walczyk, p. 40-3.

In 1990, a Farmington resident followed Thomas in his motor vehicle back to his residence at 27 Tunxis Street after Thomas cut the resident off while driving. Seeing the person following him, Thomas went inside his residence and returned with a loaded AK-47 (Soviet model assault rifle). Thomas was charged with Threatening. Exhibit K; Exhibit A, Dep. Thomas Walczyk, p. 50-55. As to incident number 90-7735 (attached to Defendants Local Rule 56(c)(1) Statement as Exhibit K), Thomas Walczyk was originally charged with a violation of Conn. Gen. Stat. §53a-22, Threatening. The State's

Attorney later entered a disposition of nolle prosequi as to this charge. Exhibit Q, Aff. Rio, 22; Exhibit A, Dep. Thomas Walczyk, p. 50-55.

In 1992, Thomas was charged with Breach of Peace, Unlawful Discharge of a Firearm, and Conspiracy to Commit Cruelty to Animals after a neighbor saw Thomas shoot his cat. Upon investigation, officers found two dead cats. Exhibit L; Exhibit A, Dep. Thomas Walczyk, p. 55-60. As to incident number 92-1741(attached to Defendants Local Rule 56(c)(1) Statement as Exhibit L), Walczyk was originally charged with violations of Conn. Gen. Stat. §53a-247, Cruelty to Animals, Conn. Gen. Stat. §53a-203, Unlawful Discharge of a Firearm by substitute information, and Conn. Gen. Stat. §53a-48, conspiracy to Commit cruelty to animals by substitute information. In this incident, Walczyk plead guilty to a violation of Conn. Gen. Stat. §53a-181, Breach of Peace. At the time of this incident, Thomas lived at 27 Tunxis Street. Exhibit Q, Aff. Rio, 23; Exhibit A, Dep. Thomas Walczyk, p. 55-60.

In 1996, Thomas was almost charged after an altercation with his brother, John. Thomas and John had an argument over Thomas' efforts to dispute land Barberino Realty. John complained that Thomas pushed him twice during the argument. John called police and made a report even though he did not feel in fear of imminent physical injury. John was concerned because his brother Thomas owns several guns and could act on the threat. Exhibit M; Exhibit A, Dep. Thomas Walczyk, p. 60. As to incident number 96-2716(attached to Defendants Local Rule 56(c)(1) Statement as Exhibit M), no charges were brought against Walczyk. Exhibit Q, Aff. Rio, 24. Despite the plaintiff's assertions that the prior incidents were unsubstantiated, Walczyk admits them as true.

These incidents are clearly relevant and do not detract from the existence of arguable probable cause arising from the warrants.

The third claim about Officer Hebert actually supports qualified immunity and the existence of probable cause rather than for the proposition stated by the plaintiff. First, the plaintiff misquotes Officer Hebert's trial testimony and has taken it entirely out of context. Second, even if the court believed the plaintiff's take on Officer Hebert's testimony (even thought the court must view it in a manner most favorable to the

defendants), the plaintiff's claim that Hebert did not believe a crime was committed establishes qualified immunity and arguable probable cause for the defendants – two reasonable police officers disagreeing. Further, when "police officers of reasonable competence could disagree as to whether there was probable cause, there is 'arguable' probable cause sufficient to warrant qualified immunity for the defendant officers." Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003), *quoting* Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000).Third, the totality of Officer Hebert's testimony reveals that Hebert believed getting a warrant later is both another way to proceed and often a superior method to proceed.  Fourth, Officer Brown's later statement is of no consequence for the same reason the plaintiff's twisted interpretation of Officer Hebert's testimony. If reasonable officers can disagree, qualified immunity applies. *See* id.

While plaintiff claims that a false picture was painted as to the conduct of confronting every issue with firearms, these incidents are all true. It is undisputed that in 1988, Thomas was arrested on the charges of Threatening, Reckless Endangerment in the First Degree, and Interfering with a Police Officer after he confronted surveyors and other workers from Barberino Realty. Thomas approached the men with a loaded AR-15 (civilian model M-16). The weapon had thirty (30) rounds in the clip and one round was locked and loaded, ready to fire. After the Farmington Police arrived, Thomas initially refused the officers' lawful commands to drop the weapon. Despite having two officers pointing their service weapons at him, Thomas refused to drop his weapon and continued to yell about trespassing and some state statute. Even after lowering his weapon, Thomas was uncooperative during the protective frisking phase and had to be physically restrained and handcuffed. It is undisputed that in 1990, a Farmington resident followed Thomas in his motor vehicle back to his residence at 27 Tunxis Street after Thomas cut the resident off while driving. Seeing the person following him, Thomas went inside his residence and returned with a loaded AK-47 (Soviet model assault rifle). It is undisputed in 1996, Thomas was almost charged after an altercation with his brother, John. Thomas and John had an argument over Thomas' efforts to dispute land Barberino Realty. John complained that Thomas pushed him twice during the argument. John called police and made a report even though he did not feel in fear

of imminent physical injury. John was concerned because his brother Thomas owns several guns and could act on the threat. Despite the plaintiff's assertions that the prior incidents were unsubstantiated, Walczyk admits them as true.

Additionally, the plaintiff has not met his burden as to who did what. It is undisputed that Cpl. Deshanes and Officer Brown relied on Sgt. Tyler. Sgt. Jepsen relied on Sgt. Tyler as did Capt. Rio. With respect to execution of the warrants, "for purposes of section 1983 immunity, an officer is entitled to assume the validity of a search warrant secured by fellow officers." Morris v. Tehama Cty., 795 F.2d 791, 795 (9th Cir. 1986); see Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 568 (1971); Bennett v. Grand Prairie, TX., 883 F.2d 400, 408 (5th Cir. 1989). Because there is no evidence that any of the other officer defendants were involved in obtaining the search warrant or had any knowledge of the facts surrounding the issuance of the search warrant, they are entitled to summary judgment with respect to such claims. See Morris, 795 F.2d at 795; Whiteley 401 U.S. at 568 (1971) (holding that police officers called in to aid in execution of arrest warrants are entitled to assume the validity of probable cause)

Accordingly, the plaintiff's Motion for Summary Judgment as to the Fourth Amendment claims must be denied.

### B.    PLAINTIFF'S CLAIM BASED ON THE EIGHTH AMENDMENT IS BARRED BY THE DOCTRINE OF ABSOLUTE JUDICIAL IMMUNITY AND THOMAS WALCZYK IS NOT ENTITLED TO SUMMARY JUDGMENT ON THIS CLAIM.

Beginning on page 21, Thomas Walczyk commences a conclusory argument that he is entitled to summary judgment on his Eighth Amendment claim that he was subject to excessive bail. This claim is brought despite clear and unambiguous precedent in the District of Connecticut that such claims are not cognizable in the face of absolute judicial immunity given the nature of the state law system for setting bail. See Sanchez v. Doyle, 254 F. Supp.2d 266, 269-273 (D. Conn. 2003); accord, Clynch v. Chapman, (Conn. 2003) Slip. Op. (already provided); Bacchiocchi v. Chapman, 2004 U.S. Dict. LEXIS 1077 (Jan. 26, 2004).

In support of his Eighth Amendment claim, plaintiff makes several conclusory arguments, none of which withstands scrutiny. At page 22, Walczyk summarily concludes that public policy reasons should trump immunity in this instance because police engaged in the often competitive enterprise in ferreting out crime, relying on Johnson v. U.S., 333 U.S. 10, 14 (1948). While the citation to Johnson is textually appealing, the citation refers to *dictum* that is irrelevant to the issue of excessive bail, the Eighth Amendment or anything else for that matter. Johnson determined than a warrantless search based on officer's detection of an odor of opium through a locked portal was in violation of the Fourth Amendment. The case has no bearing on the Eight Amendment issues present before this Court. Indeed, cries that conduct must be declared unconstitutional because of public policy are usually the last gasp before the concession of defeat.

Walczyk buttresses this argument with the conclusion that absolute judicial immunity is redundant because police officers enjoy qualified immunity under certain circumstances. Aside from offering no authority in support of this conclusion, Walczyk ignores the fact that prosecutors enjoy both absolute immunity and qualified immunity depending on the nature of their actions. For example, "state prosecutors are absolutely immune from claims arising from conduct 'intimately associated with the judicial phase of the criminal process.'" Blouin v. Spitzer, 356 F.3d 348, 357-8 (2nd Cir. 2004), *quoting* Imbler v. Pachtman, 424 U.S. 409, 430 (1976). In the present context, because police officers setting bail is a "judicial" function, the type of immunity should follow the nature of the act, the comparison to prosecutors makes sense.

In search of more support for his unfounded arguments, Walczyk, without citation to any authority – state or federal – concludes that the holdings of Sanchez v. Doyle, 254 F. Supp.2d 266 (D. Conn. 2003), Clynch v. Chapman, (Conn. 2003) Slip. Op., and Bacchiocchi v. Chapman, 2004 U.S. Dist. LEXIS 1077 (Jan. 26, 2004) are not supported by Connecticut law because the police chief or his designee is the bail-setting authority and therefore different from federal practice where law enforcement authorities are required to bring arrestees before a magistrate or judge immediately. Walczyk makes no effort to analyze the reasoning in Sanchez, Clynch, and Bacchiocchi. The

failure to offer an alternative analysis (or any analysis at all) compels this Court to deny the plaintiff's Motion for Summary Judgment as to the Eighth Amendment claims. In fact, summary judgment should enter in favor of the defendants on the claim that the plaintiff's Eighth Amendment rights because they are protected by absolute judicial immunity.

C.    **THE DECISION OF <u>STATE V. WALCZYK</u> BY THE CONNECTICUT APPELLATE COURT HAS NO BEARING ON THE QUESTION OF THE LIABILITY OF THE INDIVIDUAL DEFENDANTS UNDER 42 U.S.C. §1983 AND IS NOT A BASIS FOR GRANTING THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON THE FOURTH AMENDMENT CLAIMS.**

Beginning at page 23 of the plaintiffs' Memorandum of Law in support, the plaintiffs argue that the decision of the Connecticut Appellate Court provides "persuasive authority" that this Court may rely upon to rule in their Fourth Amendment claims. Similar to the balance of the plaintiffs' arguments, this argument is without citation to authority other than the text of the Appellate Court's decision in the Connecticut Reporter. Thankfully, the plaintiffs did not claim that collateral estoppel or issue preclusion operated in this case. In any event, this argument flatly overstates the case and ignores the doctrine of qualified immunity which protects each and every individual defendant.

The plaintiffs' contention that the decision of the Appellate Court is persuasive authority is elimination by the fact that the Appellate Court's decision has nothing to say about the actions of the officers, rather it is critical of the decision of the Magistrate. Probable cause is presumed when the arrest is made pursuant to a warrant issued by a neutral magistrate. *See* <u>Golino v. City of New Haven</u>, 950 F.26 864, 870 (2d Cir. 1991). The decision by the Appellate Court, while relevant, is only one item that may rebut that presumption. Probable cause is presumed, and arguable probable cause is all that is needed to fall within the protection of qualified immunity.  Plaintiff has not overcome this presumption by making a substantial preliminary showing that Officer Brown, Corporal Deschanes or Sergeant Tyler, in their affidavits, knowingly and intentionally, or with reckless disregard for the truth, made a false statement that was necessary to the

finding of probable cause. *See* Golino, 950 F.2d at 870. Indeed, no false statements are made in the warrants. Some information was omitted. When that information is returned, probable cause remains. The Appellate Court's decision merely identifies the mistake of the Magistrate. More importantly, the question of probable cause, arguable probable cause or the propriety of a warrant is a question of law for the court.

The Appellate Court does not clearly state that it based its decision on the Fourth Amendment of the federal Constitution or Article 1, Section 7 of the Connecticut Constitution. State v. Walczyk, 176 Because the standards of Article 1, Section 7 of the Connecticut Constitution do not provide the benchmark by which the individual defendants' conduct is measured, the Appellate Court's decision is more likely not to be persuasive as the plaintiff has reminded us that Article 1, Section 7 provides greater protections than its federal counterpart. Pl. Mem. at 8, *citing* State v. Geisler, 222 Conn. 672, 684 (1992).

Also weighing against the use of this decision as persuasive authority is the absence of the identity of parties, the absence of any discussion of qualified immunity, the absence of the relevant standard - "arguable probable cause," are far cry from the not the standard used by the Appellate Court. Accordingly, the court should reject the plaintiff's assertion that the decision of State v. Walczyk is persuasive authority and deny the plaintiffs' Motion for Summary Judgment on the Fourth Amendment claims.

### D.    ELIZABETH WALCZYK IS NOT ENTITLED TO SUMMARY JUDGMENT ON HER FOURTH AMENDMENT CLAIMS.

Elizabeth Walczyk, like her co-plaintiffs, is laboring under the misapprehension that claiming she is entitled to summary judgment does not make it so, especially when here arguments do not even address the doctrine of qualified immunity which protects all public officials. Additionally, Elizabeth assumes without analysis that she has standing to challenge the seizure of her husband's weapons despite admitting the weapons did not pass to her until his death nearly three years later. These failures, among others, compel the denial of her claim and the rejection of her arguments.

Walczyk reduces her claims to the argument that the officers should have halted their search, despite having a facially valid warrant, when Lucian and/or Elizabeth stated none of Thomas Walczyk's weapons were stored at 27 Tunxis Street. She opines a simple records check or further questioning could have prevented a further violation of her rights. Additionally, Elizabeth claims that the videotaping of the search and the officers' insistence to search the entire residence, rather than rely on her self-reporting that all of the weapons were located in the attic. Elizabeth complains the officers' continuance of the search after these issues were raised only compounds their error. Her arguments and conclusions, while interesting, ignore the governing law and demand a rule of law inconsistent with the law of this District, this Circuit and our Constitution.

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. AMEND. IV. Undoubtedly, The Fourth Amendment's "central requirement is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001). As a threshold matter, Elizabeth does not identify which officers were at her residence, which officers to whom she (or Lucian) made any of the statements concerning ownership or location, and she suggests that the officers needed only to take her word and the word of her husband. Not surprisingly, the officers did not take them at their word. The officers would have been remiss in their duties if they did not make a comprehensive search. There are decisions that have concluded that additional questions should be asked when executing a warrant at a residence to insure that it is the correct residence named in the warrant or that the residence is, in fact, owned by the person sought in the warrant. Additionally, cases have concluded that questions must be asked during the execution of arrest warrants in the context of subjects who have same or similar names to other persons and that the description of the person sought matches the person detained. Not surprisingly, questions are mandated if there is any confusion because the improper execution of such a warrant deprives someone of their freedom and liberty by being arrested. Similarly, search and seizure warrants seeking passive, inert contraband like illegal drugs, stolen property or the proceeds of

an illicit transaction might avoid seizure and remain in the possession of the owners when questions arise as to the validity or scope of the search warrant. This is a far cry from the active, dangerous nature of weapons such as firearms. Given the amount of gun violence in this country, no reasonable officer could believe otherwise if not to insure the safety of the officers present at the scene.

By the present lawsuit, Elizabeth Walczyk urges this Court to adopt a new rule of law that goes beyond the reasonableness standard implicit in the Fourth Amendment. Elizabeth Walczyk suggests that the Fourth Amendment should be extended to encompass an obligation of convenience to all person collateral to the execution of a search warrant that includes taking their word for the location of the claimed contraband, not searching where they say the contraband is not, leaving active dangerous contraband with those persons if some questions arise and videotaping is, per se, prohibited to document a search. As discussed above, the plaintiff cannot point to any authority that suggests this level of reasonableness when applied to the Fourth Amendment. It is undisputed that the Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. AMEND. IV. Certainly, the Fourth Amendment's "central requirement is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001).

The plaintiff's complaint seeks to transform the important protections of the Fourth Amendment into a rule of convenience and trust where the police should trust every person collateral to a search warrant and cast-off any effort to be comprehensive, categorical and efficient. Never mind that the plaintiff's suggestion ignores the doctrine of qualified immunity. Such a rule as this as urged by the plaintiff was not clearly established at the time the plaintiff was arrested and it is not clearly established now. This ends the inquiry. Saucier v. Katz, 533 U.S. 194 (2001); Poe v Leonard, 282 F.3d 123 (2nd Cir. 2002).

Accordingly, Elizabeth Walczyk's Motion for Summary Judgment as to her Fourth Amendment claims must be denied.

E.    **MAXIMINA AND MICHELLE WALCZYK ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THEIR FOURTH AMENDMENT CLAIMS.**

Like Elizabeth Walczyk, Maximina and Michelle Walczyk claim that they were subject to an unreasonable search and seizure by unnamed and unidentified police officers. The plaintiff fails to offer any evidence to show which Farmington officers acted in an unreasonable manner. It is undisputed nothing was seized from the residence at 28 Tunxis Street that belonged to either Maximina or Michelle.  The sole claim is that Maximin and Michelle were treated unreasonably. Like Elizabeth, this argument is a misguided effort to transform the Fourth Amendment into a rule of convenience that elevates a momentary intrusion into a mandate that prevents proper scene control, effective and efficient searching and the proper procedural of evidence collection. Maximina and Michelle cannot identify who ordered them out of the house. They have offered no evidence that it was "pouring" rain at that moment. Michelle, home sick, while unfortunate, does not implicate constitutional issues. Here, the plaintiff urges a rule that would require police officers to search individual places in the residence at the convenience of the occupants, thus searching the couch first to minimize inconvenience to the child. Clearly, this is not the law.  Moreover, Maximina and Michelle ignore the doctrine of qualified immunity.

It is undisputed that the officers told Maximina that she was free to leave – something she did. She drove down to the corner and waited for a period of time, sitting in her car. Michelle was also free to leave. Maximina took Michelle to the neighbor's house where she watched movies. Crime scene control is unquestionably reasonable. Not allowing them to go to 27 Tunxis is also reasonable – why should the officers allow Maximina or Michelle interfere with the other search in progress. As discussed above, the plaintiff cannot point to any authority that suggests this level of reasonableness when applied to the Fourth Amendment. It is undisputed that the Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S.

CONST. AMEND. IV. Certainly, the Fourth Amendment's "central requirement is one of reasonableness." Illinois v. McArthur, 531 U.S. 326, 330 (2001).

These claims ignore the doctrine of qualified immunity. Such a rule as this as urged by the plaintiff was not clearly established at the time the plaintiff was arrested and it is not clearly established now. This ends the inquiry. Saucier v. Katz, 533 U.S. 194 (2001); Poe v Leonard, 282 F.3d 123 (2nd Cir. 2002).

Accordingly, Maxmina and Michelle Walczyk's Motion for Summary Judgment as to their Fourth Amendment claims must be denied.

## III.    CONCLUSION.

For the reasons set forth above, the defendants, JAMES RIO, BRIAN KILLIANY, JAMES JEPSEN, WILLIAM TYLER, ANGELA DESCHENES and SHAWN BROWN pray that the plaintiff's Motion for Summary Judgment dated February 2, 2004 is denied.

RESPECTFULLY SUBMITTED,

THE DEFENDANTS,
JAMES RIO, BRIAN KILLIANY, JAMES
JEPSEN, WILLIAM TYLER, ANGELA
DESCHENES and SHAWN BROWN


/s/ John J. Radshaw, III
John J. Radshaw, III, ct19882
HOWD & LUDORF
65 Wethersfield Avenue
Hartford, CT  06114
(860) 249-1361
(860) 249-7665 (fax)

## **CERTIFICATION**

     This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail to the following counsel of record this 24th day of March 2004.

Jon L. Schoenhorn, Esquire
Jon L. Schoenhorn & Associates
97 Oak Street
Hartford, CT  06106


               /s/ John J. Radshaw, III
               John J. Radshaw, III