```
                                            FILED
          UNITED STATES DISTRICT COURT
             DISTRICT OF CONNECTICUT
                                         2004 SEP 29  P 4: 24

THOMAS WALCZYK, et al.,         :           U.S. DISTRICT COURT
                                :              HARTFORD, CT.
     Plaintiffs,                :
                                :
V.                              :  CASE NO. 3:02CV1536 (RNC)
                                :
JAMES RIO, et al.,              :
                                :
     Defendants.                :
```

RULING AND ORDER

Thomas Walczyk, Elizabeth Walczyk, Maximina Walczyk and Michelle Walczyk bring this action pursuant to 42 U.S.C. § 1983 alleging violations of their rights under the United States and Connecticut constitutions by six employees of the Farmington Police Department (FPD).[1] Defendants have filed three motions for summary judgment covering all counts in the complaint, and plaintiffs have moved for summary judgment on some of their claims. For the reasons stated below, defendants' motions are granted in part and denied in part, and plaintiffs' motion is denied.

I. Facts

This action arises from a 1999 incident in which Farmington police arrested Thomas Walczyk, searched two houses belonging to members of the Walczyk family, and seized Thomas's huge firearms collection. The six defendants are sued in their individual

---

[1] The defendants are James Rio, Brian Killiany, James Jepsen, William Tyler, Angela Deschenes and Shawn Brown.

capacities only.

The story begins with a dispute over the ownership of land. Plaintiff Elizabeth Walczyk has lived at 27 Tunxis Street in Farmington for a long time, formerly with her now-deceased husband Lucien. Their son, plaintiff Thomas Walczyk, now lives across the street at 28 Tunxis. Tunxis Street lies just south of Farmington Village, adjoining an area of open land. Some of the land near the Walczyks' houses is owned by Barberino Realty. During the Eighties and Nineties, Elizabeth and Lucien Walczyk tried to assert ownership of Barberino's land on the basis of adverse possession. Connecticut courts ruled against them and granted Barberino's cross-claim to quiet title. Nevertheless, Thomas Walczyk remained convinced that his family owned the land. He told FPD Captain James Rio that he had a common law right to the property, that he lost in court only because of perjury by a witness and improper conduct by a judge, and that if the police failed to take his side in his dispute with Barberino, he would "take matters into [his] own hands" and "do what [he] had to do to protect [his] property."

Meanwhile, Thomas had a series of brushes with the law, mostly involving his extensive collection of firearms. The collection includes about 90 firearms, including assault rifles, carbines, other rifles, pistols, and shotguns, along with 2600 rounds of ammunition. All of these are lawfully registered.

2

In 1988, Thomas was arrested for confronting some of Barberino's workers while carrying an M-16 loaded with 30 rounds of ammunition. After FPD officers intervened, Thomas apparently persisted in refusing to lower his weapon. He pleaded guilty to creating a public disturbance. In 1990, he was arrested for threatening after a dispute with a motorist. The motorist apparently followed Thomas home after Thomas cut him off on the road; Thomas went into his house and came out with a loaded AK-47. The charges were nolled. In 1992, he was arrested after a neighbor complained that Thomas had shot the neighbor's cat. He pleaded guilty to breach of peace. In 1996, he was almost charged with threatening after an altercation with his brother.

On August 30, 1999, Thomas Walczyk noticed that a gate he had built on Barberino's land had been torn down, and that a piece of logging equipment had been left there. He called the FPD to report a trespass. When Officer David Hebert arrived, he told Thomas that he could take no action against Barberino until Thomas could produce title to the land. Thomas replied that "the police aren't taking the necessary action to avoid a bloodbath," or words to that effect. Hebert was annoyed by the remark but did not feel threatened. Thomas says that he intended the remark in an abstract way, not as a threat that he would take any violent action.

After Hebert filed his report on the incident, some FPD

personnel interpreted the "bloodbath" remark as a threat that Thomas would make use of his weaponry in his dispute with Barberino.  The leading figure in the ensuing events seems to have been defendant Sergeant William Tyler.  Tyler, along with defendants Corporal Angela Deschenes and Officer Shawn Brown, and perhaps with the help of defendant Captain James Rio, prepared a warrant affidavit, stating that Thomas had engaged in criminal threatening.  The affidavit referred to Thomas's longstanding property dispute with Barbarino; recounted his statements to Rio and Hebert; and described the conduct underlying his prior arrests.  A magistrate signed two warrants, one for Thomas's arrest and one to search both houses and seize the firearms.

On September 7, 1999, the FPD undertook to lure Thomas from his house, fearing that if they tried to arrest him on Tunxis Street, they would find themselves in a standoff.  Defendant Sergeant James Jepsen phoned Thomas and asked him to come to the station to discuss his trespass complaint.  When Thomas got there, he was arrested and charged with threatening.  The FPD, which has the power to set temporary bail under Connecticut law, set bail at $10,000.

After Thomas was arrested and detained, a team of officers, including Jepsen and defendant Det. Brian Killiany, entered 27 and 28 Tunxis Street with the search warrant.  They found a number of weapons in both houses, some of them in places such as

a space in the kitchen behind boxes of cereal. They confiscated the weapons and the ammunition. During the search, they forced Thomas's wife, plaintiff Maximina Walczyk, and 8-year-old daughter, plaintiff Michelle Walczyk, to wait outside.

Connecticut proceeded to charge Thomas Walczyk with ten offenses. He was convicted of disorderly conduct, reckless endangerment, and improper firearm storage, but acquitted on the threatening charge. The Appellate Court reversed his convictions in 2003, holding that the warrant affidavit failed to establish probable cause to believe that Thomas had committed a crime or that the firearms seized were connected to any criminal activity. State v. Walczyk, 76 Conn. App. 169 (2003). The FPD then returned the firearms collection to the Walczyks.

II. This Action

Thomas Walczyk seek money damages under § 1983 for (1) unlawful arrest, search and seizure (Fourth Amendment); (2) "class of one" discrimination (Equal Protection Clause); (3) violation of the right to bear arms (Second Amendment); and (4) excessive bail (Eighth Amendment). In addition, he brings a Binette alleging violations of his rights under Article first, sections 7, 9 and 15 of the Connecticut constitution. His mother Elizabeth, wife Maximina and daughter Michelle join him in seeking damages based on the allegedly unlawful search of the houses.

Defendants have filed three motions for summary judgment against Thomas's claims, Elizabeth's claims, and Maximina and Michelle's claims, respectively. The Walczyks, in turn, seek summary judgment on their claims for unlawful search of the houses, and Thomas's claims for unlawful arrest and excessive bail.

III. Discussion

Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must review the record as a whole, credit all evidence favoring the nonmovant, give the nonmovant the benefit of all reasonable inferences, and disregard all evidence favoring the movant that a jury would not have to believe. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Granting summary judgment in a proper case helps conserve judicial and litigant resources because, if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, a jury verdict in favor of the nonmovant could not be sustained.

 A. Defendants' Motion for Summary Judgment as to the Claims of Thomas Walczyk

  1. Claims under the United States Constitution

   a. Unlawful Arrest, Search and Seizure

Thomas Walczyk's § 1983 claims for unlawful arrest, search and seizure fall within the scope of the Fourth Amendment and are analyzed accordingly. Singer v. Fulton County Sheriff, 63 F.3d

110, 114-15 (2d Cir. 1995).[2] Because the challenged conduct took place pursuant to facially valid warrants, the Fourth Amendment right at issue is the right to be free from searches and seizures conducted pursuant to warrants that would not have been issued if the officers seeking them had disclosed to the magistrate information within their knowledge negating probable cause. Brown v. D'Amico, 35 F.3d 97, 99 (2d Cir. 1994)(false arrest case); Golino v. City of New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991)(same). To prove that this right has been violated, the plaintiff must make the same showing required at a suppression hearing under Franks v. Delaware, 438 U.S. 154, 155-56 (1978). See Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999); Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir. 1994). Specifically, he must show that the defendants knowingly and deliberately, or with reckless disregard of the truth, made material misstatements or omissions in the warrant affidavit that were necessary to the finding of probable cause. Franks, 438 U.S. at 155-56. To determine whether the plaintiff has a triable claim, the warrant affidavit is corrected (i.e., false statements are crossed out and omitted information is added). Cartier v. Lussier, 955 F.2d

---

[2] In Graham v. Connor, the Supreme Court established that when a § 1983 claim is covered by a specific constitutional provision, such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that provision. 490 U.S. 386, 395 (1989).

841, 845 (2d Cir. 1992). If the corrected affidavit still establishes probable cause, no Fourth Amendment violation has occurred. Smith, 175 F.3d at 105; Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).

Thomas has made the necessary showing. It is undisputed that the defendants omitted to disclose information to the magistrate. Specifically, they failed to disclose (1) that they had not spoken with Officer Hebert about his conversation with Thomas; 2) that none of Thomas's previous arrests for threatening behavior had resulted in a conviction for threatening; and (3) that Thomas had not lived at 27 Tunxis Street for seven years. A reasonable juror could find that the omission of the first two items of information was critical to the finding of probable cause for the arrest, and that the omission of all three items was critical to the finding of probable cause for the searches of the houses and the seizures of the firearms.

Defendants contend that they are entitled to summary judgment on Thomas's fourth amendment claims because they have qualified immunity. A police officer sued for false arrest under § 1983 based on misstatements or omissions in a warrant application is entitled to qualified immunity, even if he did not have probable cause, unless the corrected affidavit is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." Malley v. Briggs, 475 U.S. 335, 345 (1986). In false arrest cases under § 1983 based on

defective warrants, the affirmative defense of qualified immunity may succeed as a matter of law in advance of trial, especially if the case involves omissions only, but the Second Circuit has cautioned that "summary judgment is inappropriate in doubtful cases." Velardi, 40 F.3d at 574.

On the existing record, viewed fully and most favorably to the plaintiff, a jury could find that the defendants lacked even arguable probable cause to believe that Thomas had committed the crime of threatening or that the firearms to be seized were connected with criminal activity. Such a jury finding would be consistent with the Connecticut Appellate Court's determination that the warrant affidavit fell well short of establishing probable cause. Thus, they are not entitled to qualified immunity as a matter of law.

Defendants also argue that plaintiffs have provided no evidence to support a finding of supervisory liability against Rio. A supervisor may be held liable for a constitutional tort by his employees only if the plaintiff can show an affirmative causal link between the supervisor's acts or omissions and the plaintiff's injury. Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002). Plaintiffs have provided evidence that creates an issue of fact as to whether there was such a link, in the form of Deschenes's testimony that Rio was involved in preparing the warrant affidavit. (Pl.'s Ex. L at 30.)

    b.   Other § 1983 Claims

Defendants are entitled to summary judgment on Thomas's

9

other § 1983 claims. His "class of one" equal protection claim is predicated on the theory that defendants singled him out because he possessed legally registered firearms. To prevail on this claim, Thomas must show that defendants subjected him to intentional disparate treatment. <u>Giordano v. City of New York</u>, 274 F.3d 740, 751 (2d Cir. 2001). No such evidence is presented. The Second Amendment claim is unavailing because the Second Circuit has not recognized a § 1983 cause of action based on a right to own firearms unrelated to the maintenance of a militia. <u>United States v. Toner</u>, 728 F.2d 115, 128 (2d Cir. 1984); <u>see also</u> <u>United States v. Miller</u>, 307 U.S. 174, 178 (1939). The excessive bail claim fails as a matter of law because when a police officer sets temporary bail under Conn. Gen. Stat. § 54-63c, he performs a judicial function and hence has absolute immunity from suit. <u>Sanchez v. Doyle</u>, 254 F. Supp. 2d 266, 269-73 (D. Conn. 2003).

    2.  <u>Claims Under the Connecticut Constitution</u>

        a.  <u>Article 1, Sections 7 and 9</u>

Thomas claims that defendants violated his rights under article first, §§ 7 and 9, of the Connecticut Constitution, prohibiting unlawful arrest and search. The Connecticut Supreme Court has held that there is a cause of action for violations of §§ 7 and 9. <u>Binette v. Sabo</u>, 244 Conn. 23, 47-48 (1998). Defendants contend that they are entitled to summary judgment on

these claims based on qualified immunity. Conceding that there is no Connecticut precedent on this issue, they contend that the cause of action recognized in <u>Binette</u> should be subject to the defense of qualified immunity available to police officers under § 1983. This issue need not be decided because, even assuming defendants are correct, they are not entitled to qualified immunity as a matter of law. Their motion for summary judgment on these claims is therefore denied.

    b.  <u>Article 1, Section 15</u>

Thomas also seeks damages for a violation of Article first, § 15, which provides that "[e]very citizen has a right to bear arms in defense of himself and the state." No Connecticut appellate court has recognized a private cause of action under this section and I decline to do so. Accordingly, defendants' motion for summary judgment on this claim is granted.

  B.  <u>Defendants' Motions for Summary Judgment as to the Claims of Elizabeth, Maximina and Michelle Walczyk</u>

The only claims in plaintiffs' complaint that apply to Elizabeth, Maximina, and Michelle are the claims that the search of their houses violated their rights under the United States and Connecticut constitutions. The evidence that defeats summary judgment on Thomas's unlawful search claim also defeats summary judgment on these claims.

  C.  <u>Plaintiffs' Motion for Summary Judgment</u>

Plaintiffs contend that they are entitled to summary

judgment on the claims for unlawful arrest and search.[3] To obtain summary judgment on these claims, plaintiffs must show that no reasonable juror could find that defendants' acts were lawful. This is a very difficult standard to meet, and plaintiffs have not met it. A reasonable juror would not be compelled to find that any of the defendants intentionally or recklessly omitted facts negating probable cause. Accordingly, plaintiffs are not entitled to summary judgment.

IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment as to the claims of Thomas Walczyk [Doc. # 59] is granted in part and denied in part; defendants' motions for summary judgment as to the claims of Elizabeth Walczyk [Doc. # 55] and Maximina and Michelle Walczyk [Doc. # 57] are granted in part and denied in part; and plaintiffs' motion for summary judgment [Doc. # 54] is denied. The claims that remain for trial are Thomas Walczyk's claims for unlawful arrest and search under the United States and Connecticut constitutions, and the other

---

[3] They also seek summary judgment on Thomas's claim alleging excessive bail. As noted earlier, however, the excessive bail claim fails to state a claim on which relief can be granted.

plaintiffs' claims for unlawful search under both constitutions. All other claims are dismissed with prejudice.

So ordered.

Dated at Hartford, Connecticut this 29th day of September 2004.

                              /s/ Robert N. Chatigny
                              United States District Judge